[Sac. No. 4805. In Bank.—February 28, 1936.]

M. T. O'LEARY, Respondent, v. JOHN HENRY HERBERT et al., Appellants.

RODEO VALLEJO FERRY COMPANY, Respondent, v. JOHN HENRY HERBERT et al., Appellants.

Grant H. Smith and L. C. Leet for Appellants.

T. J. O'Leary, Dunn, White & Aiken and Joseph M. Raines for Respondents.

WASTE, C. J.—Plaintiffs each brought an action claiming damages against the defendants and seeking injunctive relief. It is alleged that plaintiffs have been damaged through the cessation of the flow of water from a spring on their lands claimed to have been caused by a tunnel, dug and driven by Hastings Quicksilver Mining Company, piercing an underground reservoir which fed the spring on plaintiffs' property. The water from the underground reservoir, it is further alleged, was being allowed to run to waste through the tunnel, and the underground reservoir supplying it has been drained to a point below the level of the spring, thereby causing the water to cease to flow.

At some stage of the proceedings the action was dismissed as to the defendant Slosson. Judgments were awarded each plaintiff, to wit, (1) in favor of the plaintiff O'Leary (a) against defendant Hastings Development Company, Ltd., for $20,000; (2) in favor of plaintiff Rodeo Vallejo Ferry Company (a) against defendant Hastings Development Company, Ltd., for $1500, and (b) against defendants Sulphur Spring Valley Water Company, Ltd., John Henry Herbert, Hastings

Development Company, Ltd., Hannah M. Hastings, George W. Hastings, Zita Hastings Courtney, and L. C. Leet, as administrator with the will annexed of the estate of Alice Hastings Hunt, deceased, restraining these defendants from taking water from the underground reservoir other than in a reasonably necessary amount for domestic, agricultural, mining or other beneficial uses. By both judgments the Hastings group of defendants was relieved from costs.

But two of the several appeals taken are here for consideration. By stipulation, these causes were consolidated on appeal, and are presented here on but one transcript. We will deal with the appeals separately.

We take up first the appeal of Hannah M. Hastings, George W. Hastings, Zita Hastings Courtney and L. C. Leet, as administrator with the will annexed of the estate of Alice Hastings Hunt, deceased. The evidence and the findings show these appellants to be only lessors or landlords out of possession and control of the mining interests in the property involved in the litigation. They are the owners of reserved mining and mineral rights in the lands, which are in fact owned by defendant John Henry Herbert, who gave notice of appeal but who does not further appear. Through an established channel of transfers, the interest, possession and control of these rights are leased to the defendant Hastings Development Company, Ltd., which is a re-incorporation of the Hastings Quicksilver Mining Company, and which has, at all times here involved, continued in the exclusive possession and control of the mining property as lessee, and has conducted the mining operations without control or interference, or any right of control or interference, by these appellants. There is no evidence or finding showing the exercise or attempted exercise of any control or right of control over the lessee or the property; nor is there any finding that these appellants received any benefit from the mining operations carried on by the lessee. It therefore results that these appealing defendants are not liable for the alleged acts of negligence on the part of the Hastings Development Company, Ltd.

It is well established in this state, as in other jurisdictions, that a landlord is not liable for acts of negligence of tenants. Among the leading cases are *Kalis* v. *Shattuck*, 69

Cal. 593 [11 Pac. 346, 58 Am. Rep. 568], and *Higgins* v. *Los Angeles Gas & Elec. Co.*, 159 Cal. 651 [115 Pac. 313, 34 L. R. A. (N. S.) 717]. In the first of these cases it was held (p. 597) that a landlord is not liable for the consequences to others of a nuisance in connection with property in the possession and control of a tenant unless the landlord authorized or permitted the act which caused it to become a nuisance occasioning the injury. As stated by the Supreme Court of Massachusetts: "A landlord is not responsible to other parties for the misconduct or injurious acts of his tenants to whom his estate has been leased for a lawful and proper purpose, when there was no nuisance or illegal structure upon it at the time of the lease." (*Saltonstall* v. *Banker*, 8 Gray (Mass.), 195; *Peck* v. *Peterson*, 15 Cal. App. 543 [115 Pac. 327].) The receipt by these defendants of royalty for the minerals, under the circumstances found, would not authorize or require them to interfere with or control the mining operations carried on by their lessee. (*Alabama Clay Products Co.* v. *Black*, 215 Ala. 170 [110 So. 151].) It is not shown or found that the defendants Hastings or Leet, as administrator, have any interest in the relief sought by the respondents. In the lease of the mining interests these appellants retained the right to enter upon and examine the property at any time, and, by its terms, they required the mining company to operate the mine with due regard to the safety, development and preservation of the premises as a working mine. No damages were awarded against the absentee landlords (these appellants), nor were costs assessed against them. We must therefore conclude that the trial court was of the view that they were in no way liable in the premises. No connection has been established between these appellants and the continued flow of water through the tunnel. The restraining order against the maintenance of that condition, so far as these appellants are concerned, seems an idle act. The trial court should have granted their motion to vacate and set it aside. The judgment and order, so far as concerns these appellants, should be reversed and the appellants should have their costs on appeal. It will be so ordered.

Each of the plaintiffs recovered damages against the company operating the mine. There remains to be considered, therefore, the appeal of the Hastings Development Company,

Ltd., the lessee of the mining interests of the defendants Hastings, and, by itself or its predecessor, in exclusive possession and control of the mining rights as lessee during all of the times here relevant. The mine known as the Hastings Quicksilver Mine had been owned by the Hastings family for more than fifty years, but in 1912 the land was acquired by others, the mining rights being reserved. In 1929, the Hastings Quicksilver Mining Company, which was operating the mine on Sulphur Spring Mountain under a lease, drove a tunnel under certain old workings in order to drain the mine for the purpose of enabling it to extract the ore. A large and totally unexpected flow of water was encountered in the core. of the mountain. Plaintiffs' spring, which was located on the opposite side of the range, one and a half miles from the portal of the tunnel and 108 feet above the level of the tunnel, ceased to flow shortly after the body of water was encountered. Considerable testimony was taken as to the cause of this cessation. Eminent geologists and other experts testified on both sides of the case. The court found that the rock forming portions of Sulphur Spring Mountain to a depth of several hundred feet has been rendered open and porous through geologic processes, and now constitutes a vast underground reservoir in which, for hundreds of years last past, there has accumulated water that fell as rain on the surface of the mountain, and which water, from time immemorial to the date it ceased flowing as described, was discharged from the underground reservoir through spring flow on the mountain, one of which springs was that of the plaintiff O'Leary. This water was retained in the core of the mountain by belts of black shale lying along the base of the mountain range on both sides. There was testimony that if the mining company's tunnel were bulkheaded to take the place of the shale at that point, it would require a maximum of ten years for the water-table to rise sufficiently to cause the spring to flow again. Another eminent geologist estimated it would require approximately twenty-five years. The cost of such bulkheading would be very great.

The court found that, notwithstanding the injury complained of by the plaintiffs, the tunnel was ''excavated in the orderly and necessary course of mining for the purpose of draining and developing the defendant company's quicksilver

mine and extracting the ore therefrom; that at the time said tunnel was driven it was not known to the defendants, nor to any of them, that the underground reservoir existed in Sul-phur Spring Mountain, nor that the driving of the tunnel, nor the flow of water therefrom, would in any manner affect the flow of water from plaintiff's spring''. It appears from the evidence and findings that no person knew or could have assumed that an underground reservoir existed in the interior of the mountain. Geologists from the University of California testified that the rush of water in the tunnel ''would be as much a surprise to a geologist as it was to a miner; that rush of water there from that mine is due to an exceptional situation, and not a situation that you can find in the hills generally''. There was other evidence to like effect.

The trial court awarded damages in favor of plaintiff O'Leary in the sum of $20,000 against the appellant Hastings Development Company, Ltd.; granted the prayer of the plaintiff Rodeo Vallejo Ferry Company for an injunction restraining the use of water from the tunnel over an amount reasonably necessary for certain designated purposes, and awarded damages in its favor against the development company in the sum of $1500.

Under the common law, the case on the facts established is wanting in all of the elements upon which a recovery may be predicated. It falls fairly within the doctrine of *damnum absque injuria*. The following quotation from 1 Corpus Juris, pages 965, 966, enunciates the rule: ''No cause of action arises from the doing of a lawful act or the exercise of a legal right if done or exercised in a lawful and proper manner, the resulting damage, if any, being *damnum absque injuria*. A liability may, however, arise from the doing of a lawful act or the exercise of a legal right in a negligent or improper manner, but in such cases the liability is based not upon the act done, but upon the manner of doing it.'' The trial court here found that the work of constructing the tunnel was carried on in ''the orderly and necessary course of mining'', i. e., in the exercise of a legal right in a lawful and proper manner.

There is no pretense that the work of constructing the tunnel was carelessly or negligently done. It is well settled in California, however, that the doctrine of the common law in relation to the situation here presented has been changed and

modified. That subject is well considered and such conclusion announced by this court in *Katz* v. *Walkinshaw*, 141 Cal. 116, 122 et seq. [70 Pac. 663, 74 Pac. 766, 99 Am. St. Rep. 35, 64 L. R. A. 236]. (See, also, the first opinion in the cause, pages 138, 150.) A more recent case applicable to the facts relating to the appeal of the Hastings Development Company is *Eckel* v. *Springfield Tunnel & Dev. Co.*, 87 Cal. App. 617 [262 Pac. 425], opinion by Mr. Presiding Justice Finch of the Third District Court of Appeal (petition for hearing by the Supreme Court denied). There, as here, the waters underlying the appellant's land were percolating waters—a vast mass of water confined in a basin, always moving slowly down to an outlet or outlets. Quoting from *Hudson* v. *Dailey*, 156 Cal. 617, 628 [105 Pac. 748], the court used language stating in effect that the owner of land has a natural right to the reasonable use of waters percolating therein, although the water may be moving through his land to the land of his neighbor, and although he may prevent it from entering his neighbor's land or draw it therefrom. This right, continues the court, "arises from the fact that the water is then in his land so that he may take it without trespassing upon his neighbor. His ownership of the land carries with it all the natural advantages of its situation, and the right to a reasonable use of the land and everything it contains, limited only by the operation of the maxim *sic utere tuo ut alienum non laedas*. It is upon this principle that the law of riparian rights is founded, giving to each owner the right to use the waters of the stream upon his riparian land, but limiting him to a reasonable share thereof, as against other riparian owners thereon. We think the same application of the principle should be made to the case of percolating waters feeding the stream and necessary to its continued flow. There is no rational ground for any distinction between such percolating waters and the waters in the gravels immediately beneath and directly supporting the surface flow, and no reason for applying a different rule to the two classes, with respect to such rights, if, indeed, the two classes can be distinguished at all. Such waters, together with the surface stream supplied by them, should be considered a common supply, in which all who by their natural situation have access to it have a common right, and of which they may each make a reasonable use upon the land

so situated, taking it either from the surface flow, or directly from the percolations beneath their lands. The natural rights of these defendants and the plaintiff in this common supply of water would therefore be coequal, except as to quantity, and correlative.'' (Citing cases.) The court, quoting further from the case of *Verdugo Cañon Water Co.* v. *Verdugo*, 152 Cal. 655, 667 [93 Pac. 1021], explains the distinction between the English rule, as modified by the modern American rule of reasonable use, and the rule of correlative rights, and holds that the rule of ''correlative rights'' abrogates the English rule as to percolating waters and that the rights of all landowners over a common basin, saturated strata, or underground reservoir, are coequal or correlative, and that one landowner cannot extract more than his share of the water, even for use on his own lands, where the rights of others are injured thereby. (Citing Kinney on Irrigation and Water Rights, 2d ed., sec. 1192.) In the Eckel case, the owners of a mine constructed a drain tunnel, thereby intercepting percolating waters which naturally fed a certain spring, as a result of which the spring ceased to flow. It was held that the plaintiff was entitled to damages.

The trial court in the case now before us has found that both plaintiffs are entitled to damages. The substance of the evidence on the question of damages is that the value of the property as a going concern was much greater before the Blue Rock Spring ceased to flow than it was after there was no water. The trial court found that the property of the plaintiffs had long been maintained as a well-improved health resort; that the waters from the spring had been bottled and sold to the public for beverage and medicinal purposes; that without the water irrigation was impossible, and the lawns and greens of the golf course and the trees, plants and shrubs were damaged and greatly depreciated in size and growth because of the lack of water. Before the spring ceased to flow there was sufficient water for irrigation purposes. The flow of water cannot be restored for a period of at least fifteen years, and without the water the lands and real property of plaintiffs will be no longer useful for the purposes for which they had been used, but will be suitable only for pasturage purposes and at a greatly diminished and depreciated rental value and revenue return therefrom to plaintiffs, by

reason of all of which the improvements placed on the property have become a total loss. Consideration of the mass of evidence on the question of the damage caused by the deprivation of water owing to drainage through the tunnel, and the continued wastage thereof was a matter for the trial court. It has met the burden squarely, and we are not inclined to disturb its findings. Counsel for respondents have called our attention to the fact that, pending the determination of this appeal and in compliance with the injunction granted, a bulkhead was placed in the tunnel. Its effect on the restoration of the natural water supply of Sulphur Spring Mountain was recently the subject of comment by this court. (*L. Mini Estate Co.* v. *Walsh,* 4 Cal. (2d) 249 [48 Pac. (2d) 666].) What effect this condition may have in future on the operation of the injunction granted in this case is not now material.

(1) The judgment in favor of plaintiff O'Leary against Hastings Development Company, Ltd., for damages in the amount of $20,000 is affirmed;

(2) The judgment in favor of plaintiff Rodeo Vallejo Ferry Company against Hastings Development Company, Ltd., for damages in the amount of $1500 is affirmed;

(3) The judgment in favor of plaintiff Rodeo Vallejo Ferry Company restraining the defendant Hastings Development Company, Ltd., after a reasonable time, from draining or taking from the underground reservoir mentioned and referred to in plaintiff's complaint any waters in excess of that amount of water which is or will be reasonably necessary for domestic, agricultural, mining or other beneficial uses on lands riparian to the underground reservoir, is affirmed.

(4) The judgment in favor of plaintiff Rodeo Vallejo Ferry Company restraining the defendants Hannah M. Hastings, George W. Hastings, Zita Hastings Courtney and L. C. Leet, as administrator with the will annexed of the estate of Alice Hastings Hunt, deceased, is reversed, these defendants to have their costs on appeal.

Seawell, J., Shenk, J., Thompson, J., and Langdon, J., concurred.