[Civ. Nos. 11434, 11456. Second Appellate District, Division One.— June 16, 1938.]

VIVA STODDARD et al., Respondents, v. ROBERTS PUBLIC MARKETS, INC. (a Corporation) et al., Appellants.

Gibson, Dunn & Crutcher, Philip C. Sterry, Joe Crider, Jr., Elber H. Tilson and John F. Ford for Appellants.

Meserve, Mumper, Hughes & Robertson for Respondents.

DORAN, Acting P. J.—This is an appeal by defendants from the judgment, in an action to recover damages for personal injuries sustained by reason of the alleged negligence of defendants in the operation of a public market, where the plaintiff, who visited the market as a customer, on account of the presence on the floor of water or some slippery substance, slipped and fell, causing certain injuries from which the damages are alleged to have resulted. The market, which was located on the ground floor of a building owned by a stranger to the within action, included a grocery store, meat market, bakery, fruit and vegetable department, and a liquor store.

Defendant and appellant Roberts Public Markets, hereinafter referred to as ''Roberts'' or ''Roberts Markets'', owned and operated the grocery store. Defendant and appellant Union Produce Company owned and operated the fruit and vegetable market.

The building was approximately 100 feet in depth; a space approximately 40 feet wide, extending across the rear of the building as well as the easterly side of the building, was occupied by the Roberts Public Markets. The westerly portion of the premises was occupied by a meat market owned and operated by another tenant. The center and front of the building was occupied by defendant Union Produce Company, back of which, and between the fruit and vegetable market and the grocery store, was the bakery; on the eastern side of the building was the liquor store.

Customers visiting the grocery store entered through turnstiles located in a fence or barrier which separated the grocery store from the balance of the area. Three main aisles or entrances extended from the sidewalk into the market building. The west aisle separated the meat market from the vegetable market; the east aisle separated the liquor store from the vegetable market; and the third or center aisle extended through the vegetable market to the bakery and the grocery store in the rear.

Three or four rows of counters or tables, parallel to the sidewalk and separated by aisles, upon which the vegetables and fruits were displayed, comprised the fruit and vege-

table market. It was at the end of the second row of tables in the main aisle separating the meat market from the fruit and vegetable market, that the plaintiff slipped and fell.

Giving consideration first to the appeal of Roberts Public Markets, it is contended that there is no evidence establishing responsibility of appellant for the condition of the premises; that there is no evidence of knowledge upon the part of appellant of the presence of water or some slippery substance at the point where plaintiff fell; and that there is no evidence that such condition had existed a sufficient length of time to charge appellant with knowledge thereof.

Respondents, on the other hand, contend, as proof of appellant Roberts' liability, that appellant Roberts operated the entire market, in support of which contention it is pointed out that a large neon sign on the front of the market read "Roberts Markets Everywhere", which, it is argued by respondents, is evidence that Roberts was the proprietor; that the owners of the property, the lessors, had nothing to do with the cleaning and maintaining of the aisles and passageways of the building, but that an employee of Roberts mopped the aisles and passageways in the store once a week; that the terms of the lease between the lessor and Roberts contained the provision: "It is Further Agreed that the Lessee is to have supervision of said market as regards operations in same"; that the aisle where plaintiff slipped and fell was the means of ingress and egress to and from appellant's grocery store; and that the cleaning of such aisle and aisles by appellant was neglected.

The evidence reveals that there was no relationship between Roberts Public Markets and the Union Produce Company; each was owned and operated independently of the other; each acquired the right to occupy the premises and conduct a business therein under and according to the terms of a separate lease executed by the owner of the building. The leases, which were substantially the same, contained a provision purporting to relieve the owner of the building of liability for damages, and a provision that the lessee should "keep and maintain the entire demised space . . . in a neat, clean and attractive condition".

The Roberts Public Markets lease contained the following provision: "Whereas, the parties hereto are now in accord, the Lessor hereby leasing and the Lessee hereby hiring and

renting a certain space, known as grocery department and as designated on a Blue Print hereto attached, in said building, now, therefore, it is . . . ''  The lease between the lessor and the Union Produce Company contained the identical provision except that a fruit and vegetable department was substituted for the grocery department.  The Roberts Public Markets lease also contained the following provision: ''It is Further Agreed that the Lessee is to have supervision of said market as regards operations in same.''

As appellate tribunals frequently have been called upon to review proceedings resulting from accidents similar in character to the one herein involved, the law applicable to the respective contentions of appellant and respondents appears to be reasonably well settled.  ■  In substance, the rule may be stated thus: ''One who, during business hours, lawfully enters a store to purchase goods does so at the implied invitation of the owner . . . upon whom the law imposes the duty of exercising ordinary care and prudence to keep the aisles and passageways of the premises, in and through which by their location and arrangement a customer in making purchases is induced to go, in a reasonably safe condition so as to not unnecessarily expose him to danger or accident.''  (*Brown* v. *Holzwasser, Inc.*, 108 Cal. App. 483, 487 [291 Pac. 661], quoting *Brinkworth* v. *Sam Seelig Co.*, 51 Cal. App. 668 [197 Pac. 427].)  In an earlier authority the rule was declared as follows: ''The keeper of a public place of business is bound to keep his premises and the passageways to and from it in safe condition, and use ordinary care to avoid accidents or injury to those properly entering upon his premises. . . . ■  But this rule only applies to such parts of the building as are a part of or used to gain access to, or constitute a passageway to and from the business portion of the building, and not to such parts of the building as are used for the private purposes of the owner, unless the party injured has been induced by the invitation or allurement of the owner, express or implied, to enter therein.''  (*Schmidt* v. *Bauer*, 80 Cal. 565, 567 [22 Pac. 256, 5 L. R. A. 580].)  Such has been the rule in California for many years and was recently reaffirmed in *Tuttle* v. *Crawford et al.*, 8 Cal. (2d) 126 [63 Pac. (2d) 1128].  ■  It is also the rule, when the issue is properly raised, that the question of negligence and its corresponding responsibility is one of fact.

(*Brown* v. *Holzwasser, Inc., supra,* and *Tuttle* v. *Crawford et al., supra.*)

It was further declared in a recent opinion on the same subject, ''The proprietor of buildings who directly or by implication invites others to go therein owes to such persons who thus enter a duty to have his premises in a reasonably safe condition, and to give warning of latent or concealed perils. He is not an insurer of such persons, nor does the mere occurrence of injury on such premises to such invitee create any presumption of negligence on the part of the proprietor. His responsibility is not absolute; he is only required to use ordinary care for the safety of the persons he invites to come upon the premises.'' (*Touhy* v. *Owl Drug Co.,* 6 Cal. App. (2d) 64, 66 [44 Pac. (2d) 405].)

The question was also the subject of review in *Rothschild* v. *Fourth & Market St. R. Co.,* 139 Cal. App. 625 [34 Pac. (2d) 734], in which case the court held, ''Defendant was under an obligation to exercise ordinary care for the safety of invitees upon its premises . . . but it has been held that the mere fact that one slips and falls is insufficient to establish a *prima facie* case against a defendant. (Citing cases.) However, the question whether the condition which caused the injury had existed so long as to be discoverable by the defendant within a reasonable time is one for the jury . . . (citing cases) ; and where there is testimony as to the conditions previous to the accident by persons who had also slipped on the same floor such testimony is evidence tending to show notice to the defendant of the dangerous condition.''

In that connection it has been declared that ''In order to constitute actionable negligence there must exist three essential elements—namely, a duty or obligation which the defendant is under to protect the plaintiff from injury; a failure to discharge that duty; and injury resulting from the failure. Not only must the complaint disclose these essentials, but the evidence must support them, and the absence of proof of any of them is fatal to a recovery.'' (*Brown* v. *Holzwasser, Inc., supra,* at p. 487, quoting *Means* v. *Southern California Ry. Co.,* 144 Cal. 473 [77 Pac. 1001, 1 Ann. Cas. 206].)

■ Referring now to the facts in the light of the foregoing authorities: First, as the record indisputably reveals. the evidence does not support respondents' contention that

appellant Roberts operated the entire market. The lease between the lessor and Roberts Markets definitely fixed the limits of the area leased by Roberts, and although the blue print referred to in the lease is not in evidence, there is no evidence whatsoever in the record establishing either directly or inferentially the fact that appellant Roberts was the lessee of that portion of the market at the point where respondent slipped and fell. The neon sign in front of the storeroom, relied upon by respondents as evidence of ownership in Roberts, is of no significance. By the terms of the lease between the lessor and Roberts, the lessor agreed to furnish and install all necessary trade fixtures, cash registers, Toledo scales, ice boxes, etc., and also the neon sign. Obviously, such act on the part of the lessor, whatever may have been the reasons therefor, is no evidence of ownership in Roberts, as contended by respondents. Likewise, respondents' contention that the provision of the Roberts lease above mentioned, namely, that ''It Is Further Agreed that the Lessee is to have supervision of said market as regards operations in same,'' in effect created some liability, is of no consequence. In Union Produce Company's lease there is no reference to said last-mentioned provision. There is no evidence of any privity of contract between the Union Produce Company and Roberts, nor is there any evidence of privity of contract between any of the other tenants and Roberts. The legal effect, therefore, of the above-mentioned provision that Roberts was to have supervision of the market, merely established an agency between the lessor and Roberts; that is to say, whatever right the lessor retained to supervise the tenants of his property was accorded to Roberts, who necessarily had no more authority over the tenants than his principal, and that authority depended upon the terms of the various leases between the lessor and the tenants. There is also no evidence in the record that appellant Roberts assumed the responsibility of keeping any aisles clean except within the area described in the Roberts lease. It is true that the evidence reveals that an employee of Roberts mopped the aisles and passageways once a week, but this work was performed as the result of an arrangement between said employee and the other tenants, to which Roberts was not a party. There is no evidence that the condition which caused the plaintiff to fall existed any definite or approximated length of time before

the accident, nor is there any evidence that Roberts had knowledge of such condition until after the accident.

It should be noted at this point that, by a comparison of the facts in the case at bar with the facts of the cases cited herein as well as with the facts of all of the cases relied upon by respondents, a significant and material difference is evident. In the case at bar the accident did not occur in the grocery store operated by Roberts, or at a point within any area leased by Roberts; whereas, in all of the cases above referred to, the accident out of which each action arose occurred, and without dispute, on the premises of the defendant in such action. Thus it will be seen that in those actions last mentioned, after proof of negligence, the question of liability was comparatively simple, but in the case at bar proof of negligence does not necessarily dispose of the question of liability. Under the circumstances herein presented, proof of the dangerous condition alone did not justify the inference that Roberts either caused or had knowledge of such condition, and the record is destitute of any other evidence that tends to establish either directly or inferentially that Roberts either caused the dangerous condition or knew of its existence until after the accident. As is indicated by the authorities above quoted, the allegations of negligence, as well as the question as to whether the alleged dangerous condition ''had existed so long as to be discoverable by the defendant within a reasonable time'', raised questions of fact for the jury's determination. Manifestly, as in the case at bar, when there is no evidence of either, there can be no question of fact for the jury to determine, under which circumstances a motion by defendant for an instructed verdict should be granted. There being a total lack of evidence to support the judgment, the motion for an instructed verdict on behalf of Roberts should have been granted.

■ Giving consideration now to the appeal of Union Produce Company, it is contended by appellant that respondent slipped and fell in an aisle common to all concessionaires within the market, and that there was no showing of any act of negligence on the part of appellant Union Produce Company or its agents or employees. Although the wet or slippery spot, as contended by appellant, was in one of the main aisles, nevertheless it will be remembered that such alleged dangerous condition was immediately adjacent to the vege-

table market and the area leased and operated by appellant Union Produce Company. There was evidence, also, that it was customary for appellant to sprinkle the vegetables from time to time during the day. Thus the location of the alleged dangerous condition justified an entirely different inference with regard to appellant Union Produce Company than would be justified, as heretofore noted, with regard to Roberts Markets. There was some evidence in the record, therefore, not only of negligence on the part of appellant Union Produce Company, but of the likelihood of knowledge on the part of said appellant that such dangerous condition existed. There being evidence of those facts, the effect of such evidence was for the jury to determine. Under such circumstances, and in the absence of prejudicial error, the verdict of the jury will not be disturbed on appeal.

For the foregoing reasons the judgment in favor of plaintiff and against the Roberts Public Markets is reversed; the judgment against the Union Produce Company is affirmed.

White, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 11, 1938.