[Civ. No. 14186.   First Dist., Div. One.   Jan. 12, 1950.]

EMMA VAUGHN, Respondent, v. MONTGOMERY WARD & CO., Appellant.

Hagar, Crosby & Crosby and Hoffman & Draper for Appellant.

Cosgriff, Carr, McClellan & Ingersoll for Respondent.

PETERS, P. J.—Plaintiff slipped and fell in a store operated by Montgomery Ward & Company in Burlingame and fractured her left kneecap.  She brought this action alleging

that "defendant was careless, reckless and negligent in that prior to the happening of the injuries herein complained of, defendant . . . placed upon the floor surface of its said store building an excess amount of oily, slippery, liquid substance or material and failed to use reasonable care in applying said oily, slippery substance or material to the surface of said floor, and failed to use reasonable or ordinary care in the maintenance of said floor after the application of said oily, slippery, liquid substance but allowed said floor to remain in a slippery, hazardous and unsafe condition." The case was tried before a jury and resulted in a $5,000 verdict for plaintiff. From the judgment based thereon defendant appeals.

Plaintiff was employed in a cleaning establishment located a short distance from the Montgomery Ward store. She was a frequent business visitor in that store. On March 11, 1946, she entered the store during her lunch hour to cash a Montgomery Ward check. She walked down one of the main aisles, bordered by lingerie and hosiery counters, and up to the cashier's office on the mezzanine floor, cashed her check, came back down the stairs, and proceeded along the same aisle by which she had entered. While so proceeding her right foot slipped and she fell heavily on her left knee. She was wearing shoes equipped with cuban heels. Neither then nor at any other time that day did she observe the condition of the floor, nor did she notice any foreign substance thereon. She did not testify that the floor was slippery. She was assisted to her feet by Mrs. Hill, a clerk, who told her to see the assistant manager, Cooper. Plaintiff testified that at the moment she was embarrassed and did not think she was hurt. She refused assistance and walked out of the store. In a few moments she realized her knee was hurt and returned to the store and asked Mrs. Hill the location of Cooper's office. She was directed to the mezzanine floor, and because Cooper was out to lunch, saw Robinette, the floor manager. He directed her to a company doctor. Plaintiff then left the store. On this second visit to the store in entering and leaving she passed down the same aisle where she had fallen, but did not observe the condition of the floor on either occasion.

Plaintiff then walked to her place of employment. One of plaintiff's coworkers, Mortensen by name, testified that he saw plaintiff come limping into the cleaning establishment, and that plaintiff showed him soiled spots on the hem of her coat and on her skirt and on the left knee of her stocking. These spots felt damp and oily to him. He also testified that

he had not noticed the spots before plaintiff left for lunch, and did not know whether or not they were then present. Plaintiff testified as to these spots, and she also testified that they had not been on her clothes before she fell.

The floor on which plaintiff fell was made of maple—a hardwood. It was customarily treated with a preparation known as myco-sheen. Cooper, whose duties included the supervising of the periodic treatment of the floors, testified that myco-sheen is a resin solvent material containing no oil. Mrs. Hill testified that she had heard it had an oil base, but that she did not know from her own knowledge whether or not this was true. This substance was a liquid and was applied with mops and then dried off with dry mops. Cooper testified that the floors were never treated at any other time than on Saturday night, after closing hours; that the floors were gone over about once a month; that the counters were never moved when the floors were treated; that he could accurately ascertain the date the floors were last treated before the accident by the overtime records of his employees; that these records showed that prior to March 11, 1946, the floors had last been treated on February 23, 1946, some 16 days before the accident. The plaintiff testified that sometime during the week preceding her fall she had visited the store and noticed that some counters, in the back part of the store, not in the part where she had slipped but in another department, had been moved; that at that time she inquired of an unidentified clerk what was happening and was told that "they were getting ready to oil the floors." Mrs. Hill did testify that the floors were oiled Sunday night, March 10, the night before the accident, but when this developed to be hearsay, plaintiff's counsel expressly requested that this evidence be stricken. Such an order was made and the jury instructed to disregard this testimony.

Mrs. Hill testified that "occasionally" customers and sales girls had fallen in the store "but it has always been whenever the floor had been gone over with it . . . when the floor has first been oiled." Mrs. Hill, who was plaintiff's main witness, also testified that about 15 or 20 minutes after the accident she examined the spot where plaintiff fell "to see if there was anything wrong," and was unable to find any foreign material or dirt on the floor.

The above constitutes a complete summary of all the evidence most favorable to plaintiff. The basic question presented is whether that evidence, and all the reasonable infer-

ences based thereon, support the implied finding that defendant was negligent.

In determining this question certain fundamental principles must be kept in mind. The plaintiff was a business guest of defendant. To her the defendant owed a duty of exercising reasonable and ordinary care to keep the premises in a reasonably safe condition. But the owner of a place of business is not an insurer of the safety of his invitees. In order to impose liability on the owner it must be shown that a dangerous condition existed, and that the defendant knew or should have known of it. While under some circumstances, negligence may be inferred from the existence of a dangerous condition, the burden rests upon the plaintiff to show the existence of a dangerous condition, and that the defendant knew or should have known of it. No inference of negligence arises based simply upon proof of a fall upon the owner's floor. The doctrine of res ipsa loquitur is not applicable to such cases.

These principles are well settled and not in dispute. In most cases where the problem has been discussed there has been proof of a dangerous condition created by the owner, or proof of some foreign substance upon the floor (*Blumberg* v. *M. & T. Incorporated,* 34 Cal.2d 226 [209 P.2d 1]—dangerous mat placed on floor by owner; *Wills* v. *J. J. Newberry Co.,* 43 Cal.App.2d 595 [111 P.2d 346]—vomitus on the floor; *Hechler* v. *McDonnell,* 42 Cal.App.2d 515 [109 P.2d 426]— floor mopped and still wet when plaintiff fell; *Tuttle* v. *Crawford,* 8 Cal.2d 126 [63 P.2d 1128]—wet floor; *Rothschild* v. *Fourth & Market St. R. Co.,* 139 Cal.App. 625 [34 P.2d 734]— floor slippery from wax recently applied; *Williamson* v. *Hardy,* 47 Cal.App. 377 [190 P. 646]—oil paper placed on floor; *Lamb* v. *Purity Stores, Inc.,* 119 Cal.App. 690 [7 P.2d 197]—excess oil upon the floor; *Winsby* v. *Kertell,* 10 Cal. App.2d 61 [50 P.2d 1075]—wet leaves on floor; *Stoddard* v. *Roberts Public Markets, Inc.,* 27 Cal.App.2d 166 [80 P.2d 519]—wet spot in aisle of store; *De Verdi* v. *Weiss,* 16 Cal. App.2d 439 [60 P.2d 879]—soap and water on steps; *Brown* v. *Holzwasser, Inc.,* 108 Cal.App. 483 [291 P. 661]—slippery shiny spot on floor; *Nicola* v. *Pacific G. & E. Co.,* 50 Cal.App.2d 612 [123 P.2d 529]—floor very slippery, just been waxed, had not been polished and others slipped just before plaintiff). In all of these cases, and in every other case we have found on the subject where liability has been imposed, the plaintiff

has offered evidence of some dangerous condition either created by the owner or known to him.

Tested by these standards, it must be held that, as a matter of law, the evidence fails to support the implied finding that defendant was negligent. Interpreted most strongly in favor of plaintiff, as it must be, the evidence shows that plaintiff slipped and fell, and, that after she fell, there was a greasy substance on her stocking, coat and skirt. There is no evidence of any foreign substance on the floor. There is no evidence that the floors were recently oiled or waxed. There is no evidence, in fact, that the floor was slippery. If it may be inferred from the spots on her clothing that there was oil on the floor, there is no evidence as to how long it had been there or that defendant knew or should have known of its presence. To impose liability in the present case it would have to be held that where the evidence shows that an invitee has fallen in a store from some unexplained cause and that when she got up had greasy spots on her clothes, and that the floors had not been treated with any substance for sixteen days, such evidence supports a finding of negligence. No decided case in this jurisdiction has stated such a rule. The only way the present judgment could be sustained would be to hold that the happening of the accident raises an inference of negligence, or that the doctrine of res ipsa loquitur is applicable. That is not the law. While the recent cases have gone quite far, and properly so, in imposing liability in such cases, and while there has been a liberalizing of the old rigid rules applicable to such cases, no California case has gone to the extent required to affirm the judgment in this case.

None of the cases cited by plaintiff suggests a contrary rule. The case most strongly relied upon is *Hatfield* v. *Levy Brothers,* 18 Cal.2d 798 [117 P.2d 841]. There a plaintiff was allowed to recover for damages sustained when she slipped and fell on a waxed floor. In that case the plaintiff testified that she slipped on some excess wax. Admittedly, the floor had been waxed the morning of the accident. Several witnesses testified that the floor was extremely slippery. The employee who waxed the floor testified it was slippery. Another witness testified that she had slipped on the floor near the same spot where plaintiff fell. In upholding the judgment the court stated (p. 805) : ''The jury may well have inferred from the evidence establishing the facts above recited that the floor would not ordinarily be slippery from waxing unless an

excess quantity of wax was applied, which does not occur unless the operator is 'very careless'; that such fact taken with the facts that the wax was applied just prior to the accident, that the amount of wax applied was controlled by the one operating the application machine, that the floor was very slippery after the application, that plaintiff, Pearl Hatfield, did slip and fall, and that there was wax on her coat, would amply justify the inference that there was negligence in applying an excess quantity of wax which was the proximate cause of the injury. That inference is fortified when we consider that the evidence shows that Pearl Hatfield was wearing low-heeled shoes and, at the time she fell, was walking carefully and deliberately; that she testified she slipped on wax on the floor and there were spots on her coat that had the appearance of wax.''

The evidence in that case is much stronger than the evidence in the instant one. Here there was no evidence that there was any excess wax, oil or other substance on the floor; there was no evidence that myco-sheen was a wax; there was no evidence that the floor was slippery; there was no evidence of any negligence in applying the myco-sheen or in maintaining the floor; there was no evidence of any foreign substance of any kind on the floor. While there is a duty on the part of the owner of a store to police and inspect the aisles, the minimum duty of a plaintiff is to show that the aisles were in fact unsafe and that she fell because of that condition. That, the plaintiff in the instant case did not do. The evidence that sometime during the week prior to the accident a clerk had told plaintiff that counters in another part of the store were being moved so that the floor could be oiled, falls far short of proving that the floors were oiled just prior to the accident, or if they were, that such condition caused the accident.

The judgment appealed from is reversed.

Bray, J., concurred.

WARD, J.—I concur in the judgment.

I do not approve of the statement ''dangerous mat placed on floor by owner,'' in reference to *Blumberg* v. *M. & T. Incorporated*, 34 Cal.2d 226 [209 P.2d 1], as appears in the main opinion in the typewritten original on page 5 thereof [p. 653, *supra*].