[Civ. No. 16428. First Dist., Div. One. Dec. 12, 1955.]

SOPHIA NAPOLIN et al., Appellants, v. HOTEL ROSE et al., Respondents.

Morris Lowenthal, Juliet Lowenthal and Karl D. Lyon for Appellants.

Cooley, Crowley & Gaither and Keith, Creede & Sedgwick for Respondents.

WOOD (Fred B.), J.—Leo and Sophia Napolin brought this action for damages for injuries sustained by Sophia on the 15th of March, 1950, when plaster fell from the ceiling of their ground floor clothing shop, allegedly caused by the negligence of defendant Arline M. Rolkin, owner of the building and lessor of the plaintiffs, and the negligence of defendants Marcel, August and Rene Domergue, lessees of the upper floors of the building, which they operate as a hotel.

Rolkin was granted a nonsuit and the Domergues a directed verdict. Plaintiffs have appealed. Their theory is that the plaster was weakened by water leaking from the pipes, above, which plaintiffs say served the several tenants of the building and were under control of the defendants. Our examination of the record convinces us that there was a failure of proof at critical points and that the judgments must be affirmed.

An expert witness testified that he examined the plaster which fell and found water marks on it and on the ceiling. In his opinion, water got in there and caused this plaster to deteriorate and it collapsed; plaster can be affected, by absorption, for a distance of two feet from where the water comes through; the plaster might last for six months or a year and then all of a sudden collapse; it takes a long time for it to collapse, which will eventually occur from the vibration of streetcars or heavy trucks.

The only other evidence of water seepage into or through the plaster was that such occurred in 1948 near the front of the store and in August of 1949 near the back of the store, in each case several feet from the spot where the plaster fell when Sophia was injured.* As to those occasions, there was evidence that in 1948 a wash basin was pulled off the wall in one of the hotel rooms above plaintiffs' shop, by a person who rented the room and left in the night, and the hotel clerk shut off the valve as soon as he learned the water was running; and that in 1949 the occupant of a hotel room above the shop plugged the washbasin and left the water running

---

*Sophia was sitting at her sewing machine when the plaster fell in 1950. The machine had been in the same place for about eight years.

She said she never noticed that anything occurred right above the sewing machine at any time. She never noticed any water dripping immediately above the machine. That was true all of the time including the day of the accident. There was no dripping of any kind there. She supposed the plaster came loose and fell down. All she knew was it hit her.

Leo said he never had any trouble with the ceiling where his wife was working at the time of the accident. No plaster had fallen in that area.

from the faucet, which was remedied by the hotel defendants as soon as discovered. Plaintiffs would have us disregard this testimony because given by the defendants and therefore not binding on the plantiffs. That is not the point. Plaintiffs (represented at the trial by other counsel than those upon this appeal) gave no evidence as to the cause of the plaster falling other than the expert's opinion that the plaster had been damaged by water some time in the past and the natural inference that the water probably came from above,* although some of the defendants argue it could have come in the form of steam from clothes pressing in plaintiffs' shop. Defendants then put in evidence their explanation of the 1948 and 1949 incidents, corroborated in part by the testimony of the plumber whom they employed upon occasion. They testified, also, that they had never had a broken pipe or a leak in any of the main pipes. This certainly did not aid plaintiffs in meeting the burden of proof which rested upon them. It filled no gap in their proof of the proximate cause of plaintiffs' injury. By indicating an independent source or cause, not chargeable to the defendants, this evidence served to emphasize the speculative nature of plaintiffs' claim.

There was some testimony to the effect that there were water marks in the plaster on the ceiling of plaintiffs' shop, but that fact, whatever its significance might otherwise have been, had not been brought to the attention of the defendants. Leo testified that he never told anyone that the plaster was loose there, where the accident occurred; he "didn't notice anything." In this connection we observe that plaintiffs in their closing brief, in disavowing knowledge upon their part of a dangerous condition in the ceiling, say: "The prior incidents occurred some distance away from the sewing machine where the plaster fell at the time of the accident. Plaintiff positively testified that prior ot the accident she had never noticed any plaster chipping or any water dropping from the ceiling above the sewing machine. (R.T. 35.) Her husband also confirmed that prior to the accident he had never had any trouble with the ceiling in the area above the sewing machine (R.T. 62), . . ."

Plaintiffs claim there is evidence through the testimony of defendant August Domergue that the water system was old

---

*Sophia, in describing the water seepage or dripping at the front of the store in 1948, did say that it was water "from some pipe there" but we do not regard that as substantial evidence as to a specific source, whether leakage from a main pipe or the result of the tearing down of a water basin by a subtenant or licensee of the hotel, or other source.

and dilapidated, for which reason wash basins pulled off from the walls and broke the pipes when they came off. This is not correct. Plaintiffs' counsel asked such a question of August, which was objected to and the objection sustained as calling for the conclusion of the witness. It happened that the witness answered affirmatively just ahead of the objection, whereupon the court asked ''What is the question?'' Plaintiffs' counsel asked the reporter to read the question and thereupon the court sustained the objection, and plaintiffs' counsel said ''I see—yes, your Honor,'' and then reframed the question. Under such circumstances the answer was ruled out as effectively as if a motion to strike had been made and granted. A little later the witness answered: ''Well, I tell you, the basin did pull down, you know; it was pulled down by the people that was occupy the room, they pull the basin out from the wall, you see; then the basin fell on the floor so it broke in two under the washbasin . . .'' The witness was not present at the time but he visited the room soon afterwards, saw that the basin was away from the wall and that the tube under the basin was broken. He said that it happened in 1948 and that water from that basin leaked into plaintiffs' store. Although some of this was hearsay it remained in. August added that the water leaked down two times: in April, 1948, and in August, 1949.

There was evidence that plaster had fallen from the ceilings of other ground floor stores in the same building and that there had been leakages of water from those ceilings. But there was no evidence as to the source of the water in such cases other than the testimony of August Domergue as to the breaking of one wash basin and the stoppage of another in 1948 and 1949, respectively, and the absence of breaks in the main pipes.

Plaintiffs place some reliance upon a conversation Leo had with the landlord's representative, Mr. Gill, in 1948. When he noticed the plaster had fallen Leo went to Gill and told him about it. Gill said ''I am going to take care of it,'' but in fact did nothing. That remark was not definitive of an obligation or of the violation of an obligation; not an admission of the negligent misconduct charged in the complaint. Also, it pertained only to the 1948 incident. It could not very well be stretched to comprehend and include an admission of legal responsibility for the 1950 accident.

When the seepage occurred in 1949, Leo went upstairs and

told August Domergue, the hotel operator, not the landlord's representative. According to Leo, August "said he had trouble with the plumbing, he always have trouble, and he is going to take it up with the owner." That does not of itself evidence a dilapidated, worn-out and leaky water system as plaintiffs would have us infer. Concerning that remark, the trial judge observed: "We have all had a lot of trouble with plumbing, and I have had a lot of trouble in my house but I don't claim it is negligence." Certainly it was not an admission of liability by August when, in the same breath, he said he would take it up with the owner. Nor is it evidence against the owner because this line of testimony was admitted only as to the defendants Domergue.

In their opening brief plaintiffs claimed the Domergues had admitted, by not denying, certain material allegations of the complaint. Subsequent augmentation of the record, pursuant to stipulation, shows that those allegations were denied.

 It is apparent from this summary that there is no substantial evidence that the deterioration of the plaster which fell and injured Sophia was caused by water which escaped as the proximate result of the negligence of any of the defendants. The only evidence of a specific source and cause for the escape of water from above was the misconduct of hotel guests upon two occasions, one in 1948 and one in 1949. In each case the overflow was promptly stopped, as soon as discovered by the hotel operators or their representative.

 It is well established that "a landlord is not liable for the consequences to others of a nuisance in connection with property in the possession and control of a tenant unless the landlord authorized or permtited the act which caused it to become a nuisance occasioning the injury. As stated by the Supreme Court of Massachusetts: 'A landlord is not responsible to other parties for the misconduct or injurious acts of his tenants to whom his estate has been leased for a lawful and proper purpose, when there was no nuisance or illegal structure upon it at the time of the lease.' [Citations.]" (*O'Leary* v. *Herbert*, 5 Cal.2d 416, 419 [55 P.2d 834]. See also *Mundt* v. *Nowlin*, 44 Cal.App.2d 414 [112 P.2d 782]; *Shell Oil Co.* v. *Richter*, 52 Cal.App.2d 164, 168 [125 P.2d 930].)

 Upon similar principles a hotel operator is not responsible, under all circumstances, for the misdeeds of a guest.

A hotel does not have exclusive control of the room, its fixtures and its furniture, assigned to a guest. The guest has at least partial control. (*Larson* v. *St. Francis Hotel,* 83 Cal.App.2d 210, 212 [188 P.2d 513].)

Under the circumstances in evidence here, the misdeeds of guests in breaking a basin from the wall and in causing a basin to overflow by stopping it up and leaving the faucet open, are not such as to be normally expected, hence not chargeable to the hotel operator unless after learning of it or after such period of time as he should become aware of it he fails to abate it.

In contrast, the water damage cases upon which plaintiffs rely were predicated upon evidence which showed the source of the escaping water, a source which was under the control of the defendant, and evidence that furnished a basis for an inference that such right of control had been negligently exercised. In *H. C. Capwell Co.* v. *Blake,* 9 Cal.App. 101 [98 P. 51], a landlord negligently failed to control the drainage of rainwater from the roof; in *Rathbun Co.* v. *Simmons,* 90 Cal.App. 692, 698-699 [266 P. 369], a tenant's merchandise was damaged by water from a defective roof and drain system which was under the landlord's control and there was evidence that the latter had been negligent. In *Pirrone* v. *Nuccio,* 78 Cal.App.2d 864 [179 P.2d 18], it conclusively appeared that an upper tenant had notice that there was a leakage of water "either from the bathroom or from the toilet room into the ceiling of the restaurant [below] during a ten-day period immediately preceding the deluge" (p. 869) and failed to use ordinary care in the inspection of the facilities provided for the occupants of the rooms on the second floor of the building directly over the premises occupied by the plaintiff. In *Columbia Lab., Inc.* v. *Cailfornia Beauty Supply Co.,* 24 Cal.2d 114 [148 P.2d 15], the injury was caused by water that seeped through walls and ceiling during a rain storm that occurred after the landlord had negligently failed to repair a fire damaged roof.

Plaintiffs argue that the doctrine of res ipsa loquitur fills the gap, if any, in their proof. Defendants as vigorously deny it. We think the defendants have the better of the argument.

The test for the applicability of the res ipsa loquitur doctrine has been many times stated, perhaps most clearly and adequately by Chief Justice Gibson in *Zentz* v. *Coca Cola Bottling Co.,* 39 Cal.2d 436, 446-447 [247 P.2d 344]: ". . .

as a general rule, res ipsa loquitur applies where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible. In determining whether such probabilities exist with regard to a particular occurrence, the courts have relied both upon common knowledge, and the testimony of expert witnesses, and they have considered the circumstances relating to the accident in each particular case, such as the extent of control exercised by the defendant, the plaintiff's own conduct, the likelihood of negligence by some third person, and, in some situations, evidence that the defendant is better able than the plaintiff to explain what happened. All of these matters have been treated as aids to help the courts in determining whether the accident was of such a nature that the injury was more probably than not the result of the defendants' negligence.''

In the Zentz case a bottle of Coca Cola broke. It was natural and logical to require the bottler to explain, in the absence of any indication of improper handling after it left the bottler's custody. Similar situations obtained in *Gordon* v. *Aztec Brewing Co.*, 33 Cal.2d 514 [203 P.2d 522], and *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453 [150 P.2d 436]. In *Juchert* v. *California Water Service Co.*, 16 Cal.2d 500, 515 [106 P.2d 886], and in *Buffums'* v. *City of Long Beach*, 111 Cal.App. 327, 329-330 [295 P. 540], the cause of the injury was directly traced to the breaking of a water main that was under the management of the defendant. In *Knell* v. *Morris*, 39 Cal.2d 450 [247 P.2d 352], the water leaked from a heater on the floor immediately above plaintiff's store and there was evidence of negligence upon the part of a plumber whom the occupant of the premises above had engaged to repair the heater. In *Rose* v. *Melody Lane*, 39 Cal.2d 481 [247 P.2d 335], a patron of a cocktail lounge was injured when a defective stool broke. Defendant, owner of the lounge, was the sole person who could have been guilty of the negligence which was probably the proximate cause.

The mere fact that an accident happened and an injury resulted does not of itself call the doctrine of res ipsa loquitur into play. After reviewing a number of cases in which the doctrine was applied, this court in *Vaughn* v. *Montgomery Ward & Co.*, 95 Cal.App.2d 553, 556-557 [213 P.2d 417], said: ''In all of these cases, and in every other case we have found on the subject where liability has been imposed, the

plaintiff has offered evidence of some dangerous condition either created by the owner or known to him."

This causal connection requirement was expressed in the Zentz case in these words: "The defendant, of course, should not be liable unless it appears from all the facts and circumstances that there is a sufficient causal connection between his conduct and the plaintiff's injury, and it has been held that res ipsa loquitur will not apply if it is equally probable that the negligence was that of someone other than the defendant. (*LaPorte* v. *Houston,* 33 Cal.2d 167, 169-170 [199 P.2d 665] ; *Hernandez* v. *Southern Calif. Gas Co.,* 213 Cal. 384, 387-388 [2 P.2d 360] ; *Olson* v. *Whitthorne & Swan,* 203 Cal. 206, 208-209 [263 P. 518, 58 A.L.R. 129] ; *Tower* v. *Humboldt Transit Co.,* 176 Cal. 602, 607 [169 P. 227].) As said in the LaPorte case, *supra* [33 Cal.2d at p. 170], the doctrine is not applicable where it is 'at least equally probable that the accident was caused by some fault . . . for which defendants were not liable' and where 'it cannot be said that it is more likely than not that the accident was caused by the negligence of *defendants.*' (Italics added.)" (P. 443 of 39 Cal.2d. See also *Gerhart* v. *Southern Calif. Gas Co.,* 56 Cal.App.2d 425 [132 P.2d 874] and cases therein reviewed.)

 It is apparent that under the general rule the evidence in this case does not bring the doctrine of res ipsa loquitur into play. It is equally clear that this case does not present any of the unusual situations (such as the patient who receives injuries while unconscious during the course of medical treatment) mentioned in the Zentz case at pages 445 and 446 of 39 Cal.2d.

The judgments appealed from are affirmed.

Peters, P. J., and Bray, J., concurred.