8 Cal.Rptr. 712]

[Civ. No. 24564. Second Dist., Div. One. Nov. 1, 1960.]

MABEL CLAYTON, Respondent, v. J. C. PENNEY COM-
PANY (a Corporation) et al., Appellants.

Schell & Delamer, Schell, Delamer & Loring and Patrick M. Hyde for Appellants.

John H. Gordon and Edward A. Hume for Respondent.

FOURT, J.—This is an appeal from a judgment in favor of plaintiff for personal injuries received from a fall in defendants' store.

A résumé of a part of the testimony is as follows:

On January 16, 1957, the plaintiff was a business invitee in the Inglewood store of defendants. Some time between the hours of 3 a.m. and 8 a.m. of the day in question the asphalt tile floors of the store were cleaned and waxed.

This work was done by employees of the defendants. The cleaning was done with a product called ''Mycoleum'' which is a fatty acid soap. After the soap is used the floor is supposedly mopped and dried before the wax is applied. The wax which was used is called ''Sole-Grip.'' It is a carnauba wax material containing colloidal silica, the latter element being added to make the wax a ''slow'' wax or less slippery than it otherwise would be. The directions of the manufacturer with reference to the use of the wax were that it was not to be diluted and was to be applied in an even coat with a clean mop. In preparing the particular mix of wax which was applied after the floor was cleaned on the day in question the defendants' employees, in charge of maintenance, diluted the solution of wax by adding one quart of water to approximately two gallons of ''Sole-Grip.'' The work of applying the wax was finished at about 8:30 a.m. The store opened at 9:30 a.m. The chief maintenance man stated that after making the application of the wax he inspected and tested the floor to determine whether there were any slippery places. Some two years or more after the accident an expert, engaged by the defendants, made a test on the floor and he testified as to his findings. In the expert's test there was no dilution of the wax material and the application thereof was in accordance with the manufacturer's directions.

The plaintiff, with a lady friend, Mrs. Elsie Johnson, entered the store about 1 or 1:30 p.m. on January 16, 1957. The two ladies separated upon entering the store and went to separate departments therein, where they were interested in making purchases. On their way back toward each other in an aisleway and when the ladies were about 18 feet apart, the plaintiff, while walking, fell forward with a thud and hit her head and suffered a fracture and other injuries. Mrs. Johnson immediately went to the assistance of plaintiff. Mrs. Johnson saw a skid mark, about a yard long and a quarter of an inch wide, on the floor leading up to one of the heels of plaintiff. She stated that the skid mark was ''very visible'' and that the floor was ''very highly glossy and waxed.'' The plaintiff was wearing low-heeled shoes.

The plaintiff stated that she went into the store about 1 p.m.

4

on the day heretofore mentioned and went to a department of the store which is downstairs. She came out of the basement and was walking in an aisleway toward her friend, Mrs. Johnson, and as plaintiff testified, "the next thing my feet were out from under me and I was on the floor." She further said, "All I know, that my feet skidded out from under me and I landed." She noticed quite a skid mark on the floor leading up to one of her feet. She stated further that the floor was "very shiny" and it had a "gloss to it."

The plaintiff was taken to the office of a doctor selected by the defendants. In getting the history of what had occurred the doctor was told by plaintiff that she had slipped on the highly polished composition floor at the store and had fallen and landed on her right elbow and knee.

A Mrs. Gilmore was in the store on the same day about noontime and while walking in an aisleway similar to and on the same level with and about 60 to 70 feet away from the place where plaintiff fell, she slipped and skidded and fell. Mrs. Gilmore was directed to go to the same doctor who attended the plaintiff.

The manager of the store testified that he saw no skid marks. He was asked about the floor as follows, "And, in your opinion, not slick?" His answer was, "In my opinion, yes, it was in good condition."

Appellants assert that (1) the court erred in denying defendants' motion for a directed verdict and for judgment notwithstanding the verdict; and (2) the court erred in instructing the jury on proximate cause.

In effect appellants contend that there is no substantial evidence to sustain the verdict and the judgment, that there is only one inference which can be drawn by a reasonable person from the evidence.

It is to be remembered, as stated in *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427, 429 [45 P.2d 183]:

". . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible. It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substi-

tute its deductions for those of the trial court. (*Treadwell* v. *Nickel*, 194 Cal. 243 [228 P. 25] ; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 P. 1157] ; *Wing* v. *Kishi*, 92 Cal. App. 495 [268 P. 483].)''

It is admitted that the defendants owed to plaintiff as a business invitee a duty to exercise reasonable care in keeping the premises reasonably safe for her and others as business invitees.

''Negligence may be established by circumstantial evidence, which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts. A plaintiff relying on circumstantial evidence does not have to exclude the possibility of every other reasonable inference possibly deriving from the evidence. (*Sanders* v. *MacFarlane's Candies*, 119 Cal.App.2d 497, 500 [259 P.2d 1010].)'' (*Jones* v. *Hotchkiss*, 147 Cal.App.2d 197 at 202 [305 P.2d 129].)

It is reasonable to infer from the evidence in this case that the floor was very glossy from the work which was done on it that morning; that the floor was highly polished; that it was slippery in places; and that a person might very well skid and fall down on such a shiny floor. Further, it is reasonable to infer from the skid mark in the wax on the floor leading up to one of the feet of plaintiff after she had fallen that such mark resulted from a skidding of one of her shoes on the slippery surfaced floor. To say as defendants in effect assert that shiny, glossy, very shiny and highly polished do not indicate that the floor was in all probability slippery is to engage in semantics too technical for practical purposes. It is evident that the floor was so waxed in spots at least as to make it slippery and dangerous.

Paraphrasing what was stated in *Sharpless* v. *Pantages*, 178 Cal. 122, 124 [172 P. 384] : ''It being the duty of the defendant to use ordinary care to maintain the carpet upon the steps (waxed floor) in such condition that it would be safe for persons to pass thereon in an ordinary manner, the fact that the plaintiff's foot slipped as she stepped upon the carpet (waxed floor) is some evidence tending to show that defendant had failed to do so, . . .'' There is evidence in this particular case which demonstrates that the defendants failed to use ordinary care to maintain the particular portions of the floor in such condition that it was safe for persons to walk thereon in an ordinary manner.

In this particular case it is admitted that defendants' em-

ployees did the work of cleaning the floor and applying the wax thereto in the course of their employment. In any event the defendants did have notice of the slippery condition of at least one part of the aisleway about one-half hour before the plaintiff slipped and fell and was hurt, because Mrs. Gilmore had slipped and had fallen on the newly waxed surface. Apparently, defendants did nothing after Mrs. Gilmore fell to see whether any other part of the newly waxed floor was unsafe for business invitees. It is the duty of this court "to accept as established all facts and all inferences favorable to respondent which find substantial support in the evidence." (*New* v. *New,* 148 Cal.App.2d 372, 383 [306 P.2d 987].)

Defendants' maintenance man testified that he had inspected the floor for slippery places immediately prior to the opening of the store and that he found no such slippery places. It is apparent that it was anticipated that there might be slippery spots after the waxing; otherwise why did the chief maintenance man inspect the floor for slippery places? In any event the jury heard the maintenance man and the other employees of defendants and apparently did not wholly accept their testimony.

 It was appropriately stated by Justice Shinn in *Nicola* v. *Pacific Gas & Electric Co.,* 50 Cal.App.2d 612, at page 615 [123 P.2d 529] :

". . . The right of a proprietor of a place of business to wax a floor which the customers are expected to use is not one which upon any reasonable theory can be held to be superior to his duty to use ordinary prudence and caution to avoid injury to those who come to his premises by invitation. If wax or, as in the present case, both wax and soft soap, are applied to the floor, it must be in such manner as to afford reasonably safe conditions for the proprietor's invitees, and if such compounds cannot be used on a particular type of floor material without violation of the duty to exercise ordinary care for the safety of invitees, by reason of the dangerous conditions they create, they should not be used at all."

It is our opinion that the jury could have believed from the evidence that the floor was sufficiently treated with the fatty soap and wax as to make the particular area where plaintiff fell down unsafe for use. There was no evidence that plaintiff might have slipped and fallen from any cause other than the extreme slipperiness of the surface of the floor.

Appellants rely heavily upon the case of *Vaughn* v. *Mont-*

*gomery Ward & Co.*, 95 Cal.App.2d 553 [213 P.2d 417]. However, in that case the court said at page 557: "... There is no evidence that the floors were recently ... waxed. There is no evidence, in fact, that the floor was slippery." The factual situation, in other words, in the Vaughn case and in the case before this court are entirely different.

Appellants also rely upon *Oldenburg* v. *Sears, Roebuck & Co.*, 152 Cal.App.2d 733 [314 P.2d 33]. In that case the plaintiff was hurt by slipping on a piece of chalk on the sidewalk area outside of the store. The defendant did not put the chalk upon the sidewalk; there was no evidence that defendant had sold the type of chalk which was on the sidewalk; there was no evidence that defendant had any notice of such a condition or any reason to believe that the chalk was on the sidewalk. The court properly held that there was no proved negligence upon the part of the defendant. Such is not the case before this court.

Appellants' last contention is with reference to an instruction on proximate cause. The court gave Instruction Number 104 of Book of Approved Jury Instructions. The first sentence of said instruction reads as follows:

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. . . ."

Appellants offered an instruction, the first sentence of which reads as follows:

"A proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. . . ."

The difference between the two is that in the plaintiff's instruction the article "The" is used and in the defendants' proposed instruction the article "A" is used.

The court gave other instructions wherein both the expressions "proximate cause" and "a proximate cause" were used.

We have no doubt that the jury was not misled by any such claimed error in this case.

The jury in this case was fully and adequately instructed on all proper phases of the law.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.