[Nos. A107918, A108822. First Dist., Div. One. Oct. 16, 2006.]

LILA CHEE, Plaintiff and Appellant, v.
AMANDA GOLDT PROPERTY MANAGEMENT et al., Defendants and
Respondents.

## Counsel

Von Till & Associates, Steven F. Von Till and Andrew J. Kopp for Plaintiff and Appellant.

Horvitz & Levy, Jon B. Eisenberg, Wendy S. Albers; Valerian, Patterson & Stratman and Frederick A. Patterson for Defendants and Respondents Marina Seagate Homeowners Association and Jerome Brown.

Philip M. Andersen & Associates, Jeanette N. Little and Milan R. Yancich for Defendants and Respondents Amanda Goldt Property Management, Amanda Goldt and John Sellars.

## Opinion

**STEIN, Acting P. J.**—Plaintiff, Lila Chee, a resident and owner of a condominium unit in the Marina Seagate complex, appeals from a judgment entered in favor of all defendants on her complaint seeking damages for personal injuries she suffered when a dog belonging to Olga Kiymaz, a tenant of another unit in the same complex, jumped on Chee.

### Facts

At the time of the incident, plaintiff was 71 years old, and a resident of the Marina Seagate condominium complex. On March 19, 2001, she was injured when a Jack Russell Terrier owned by Olga Kiymaz, who rented the condominium next door to plaintiff, ran out of Kiymaz's unit and jumped on Chee, causing her to fall and sustain numerous injuries. Kiymaz rented the condominium from Jerome Brown, who had hired Amanda Goldt Property Management to find a tenant and collect rents. Chee filed a second amended complaint against Jerome Brown, the Marina Seagate Homeowners Association (hereafter, the Association), Amanda Goldt Property Management, and two of its property managers, after Kiymaz, the dog's owner, filed for bankruptcy, and was dismissed from the action.

As against Brown[1] the complaint alleged several causes of action:

The cause of action for "premises liability" alleged that, as the owner, Brown breached his duty of care by allowing a dangerous condition to exist

---

[1] Plaintiff states that, with respect to the Association, she appeals only the postjudgment award of attorney fees. We therefore summarize only the causes of action and theories of liability advanced against Brown and Goldt Property Management and its agents or employees.

on his property, i.e., his tenant's dog, whose "characteristics and traits posed a risk of harm to persons in the common areas." The complaint did not allege Brown had actual knowledge that the dog was dangerous, but incorporated allegations concerning characteristics of the Jack Russell Terrier as a breed that made it dangerous, especially if not restrained on a leash, and further alleged that Brown had a duty to inspect and to investigate the characteristics of a dog kept on the premises by his tenant.

In the cause of action for negligence, plaintiff similarly alleged that Brown "knew, or had reason to know, or should have known" of the alleged traits, propensities, or characteristics of his tenant's dog that posed a foreseeable risk of harm, and alleged that Brown had a duty to inspect and investigate the characteristics of a dog kept by his tenant. The cause of action for nuisance simply alleged that "[the] dog residing . . . and running free . . . in the common areas of the condominium project constituted and caused a nuisance."

Plaintiff further alleged several causes of action based upon acts of Olga Kiymaz that plaintiff contended constituted negligence, negligence per se, or for which Kiymaz would be strictly liable. These acts included failing to control the dog and allowing it to be off-leash in common areas. In these causes of action, plaintiff alleged that Brown, as the owner of the unit, was vicariously liable for Kiymaz's acts. Vicarious liability was premised upon the Marina Seagate declaration of covenants, conditions and restrictions (CC&R's). The CC&R's allow residents to have one small pet per unit. They provide that "[a]n owner of any pet shall assure that such pet is restrained at all times it is upon the common areas, that such pet does no waste to common areas or other Units, and that such pet causes no unreasonable noise or other disturbances or nuisance within the Project."[2] Article II, section 7 of the CC&R's further provided that "any owner may delegate his right to enjoyment of the common area and facilities to . . . his tenants . . . who reside within the Project. . . . Such owner is fully responsible for all acts or omissions of his delegates." Article VIII, section 4 of the CC&R's further specifies: "The provisions of this Declaration shall be equitable servitudes, enforceable by any Owner and/or the Association against the Association and/or any other Owner, tenant or occupant of the Project. [T]he Association

---

[2] The Association rules and regulations further provide: "The owner of any pet shall assure that such pet is restricted by a responsible person and monitored at all times it is upon the common areas. . . . [¶] [and] that such pet causes no unreasonable noise, disturbance, nuisance or threat to common areas or other units. [¶] No resident shall keep a pet that psychologically or physically poses a threat to other residents, guests or pets. [¶] . . . [¶] SAN LEANDRO ANIMAL CONTROL regulations shall be observed by resident pet owners. . . . [¶] Homeowners are responsible for their guests or renters adhering to these regulations."

or any Owner(s) shall have the right to enforce, in any manner permitted by law or in equity, any and all of the provisions of the Project Documents . . . ."

The complaint also alleged that Brown breached a contract with plaintiff. It alleged the contract was created by the aforementioned provisions of the CC&R's. Plaintiff alleged that Brown breached this contract by "failing to indemnify, compensate and pay for the damages and losses caused to plaintiff by the acts or omissions of Olga Kiymaz." She also sought a declaration that under the CC&R's, Brown was liable to plaintiff for his tenant's negligent acts, and contracted to indemnify plaintiff for any losses she suffered as a result of his tenant's actions.

The only causes of action alleged against Goldt Property Management, Amanda Goldt and John Sellars (hereafter, collectively, Goldt Property Management) were the causes of action for nuisance, and for negligence based upon failure to investigate the nature and suitability of the tenant's dog.

Brown moved for summary judgment, or in the alternative for summary adjudication, and Goldt Property Management separately filed its own motion. Brown contended that, absent actual knowledge that Kiymaz's dog was dangerous, he owed no duty to plaintiff to protect her from the dog, or to inspect or investigate whether the dog had dangerous propensities. He asserted the undisputed facts established that he did not have such knowledge, and submitted evidence supporting his assertion of these facts. He also contended that the same undisputed facts established the absence of liability for a nuisance created by Brown's tenant, and that plaintiff could not show the dog's presence and behavior interfered with the use and enjoyment of plaintiff's property.

With respect to the causes of action seeking to impose vicarious liability on Brown for Olga Kiymaz's negligence, negligence per se, or strict liability regarding her dog, Brown contended that, as a matter of law, vicarious liability could not be based upon the CC&R's permitting a homeowner to delegate to a tenant the right to enjoy the common area, and the Association's rules and regulations concerning pets. Brown further contended that the CC&R's did not create a contractual obligation to indemnify other homeowners for personal injuries caused by a tenant.

Goldt Property Management also filed a motion for summary judgment on similar grounds. Goldt Property Management submitted evidence that it had

no ownership interest in Brown's condominium, and that Brown hired it merely to find a tenant and collect rents. It also submitted evidence that it had no knowledge prior to the incident involving Kiymaz's dog that the dog had any dangerous or vicious propensities, that it had not received any complaints regarding Kiymaz's dog, and that it had not observed Kiymaz's dog display any vicious or dangerous behavior.

In opposition to both motions, plaintiff asserted that many of the aforementioned facts regarding lack of actual knowledge were disputed, but cited no evidence on this issue in her separate statements. Instead, plaintiff asserted that the credibility of the witnesses for Brown and Goldt Property Management was in issue. After conducting further discovery, plaintiff submitted supplemental statements of undisputed facts, and evidence that, *after* the incident, the Association notified Kiymaz that, in July 2001, she was seen walking her dog without a leash, and fined her $50. Also in July 2001, the Association warned Kiymaz that it had received complaints she was allowing the dog to run free in the common areas and was not cleaning up after her pet, and that these actions could also result in fines. In addition, plaintiff submitted evidence that other owners had seen the dog urinating and defecating in the common areas. Plaintiff also submitted the declaration of an expert concerning characteristics of the breed of Jack Russell Terrier that the expert opined made it unsuitable for living in a condominium.

The court granted both motions. With respect to Brown, the court determined he owed plaintiff no duty of care absent actual knowledge that Kiymaz's dog was dangerous, and plaintiff presented no evidence to create a triable issue of fact that he had such knowledge. The court further found, as a matter of law, that Brown could not be held vicariously liable for the acts of the tenant, based upon the CC&R's, and was not contractually obligated by the CC&R's to compensate or indemnify plaintiff. As to the cause of action of nuisance, the court stated that plaintiff submitted no evidence to create a triable issue of fact that "the presence of the dog in Mr. Brown's unit affected Plaintiff's use and enjoyment of her rights in real property." The court granted the motion for summary judgment filed on behalf of Goldt Property Management on similar grounds.

*Attorney Fees*

After the court entered judgment in their favor, Brown and the Association jointly moved for an award of attorney fees pursuant to Civil Code section 1354. They sought fees in the amount of $33,644 incurred in their defense.

Plaintiff opposed the motion, arguing that none of her causes of action were brought to enforce the CC&R's within the meaning of Civil Code section 1354. Plaintiff also asked the court, if it determined that only some of the causes of action fell within the purview of Civil Code section 1354, to apportion the fees requested. Plaintiff further urged the court to apportion fees between Brown and the Association where defense work was done jointly on causes of action in which they were both defendants. She argued that, if the court determined that only one defendant was entitled to fees, it should reduce the amount of fees by whatever amount the court determined was attributable to the defense of the other.

The court granted Brown's and the Association's motions for fees "in part." It determined that only the causes of action for breach of contract and declaratory relief fell within the purview of Civil Code section 1354 as "action[s] brought to enforce the governing documents of the homeowner's association." The court apportioned the fees and determined that only $6,000 was reasonable and attributable to the defense of these two causes of action.

ANALYSIS

## I.

### Summary Judgments in Favor of Brown and the Goldt Property Management

This court reviews de novo orders granting motions for summary judgment, because the motion raises only issues of law. (*Mata v. Mata* (2003) 105 Cal.App.4th 1121, 1127–1128 [130 Cal.Rptr.2d 141]; disapproved in part on another ground in *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 244–250 [30 Cal.Rptr.3d 145, 113 P.3d 1159].) "Summary judgment in a defendant's favor is proper if (1) the defendant shows one or more elements of a cause of action cannot be established, or there is a complete defense to it; and (2) the plaintiff fails to meet the burden of showing the existence of a triable issue of material fact." (*Mata v. Mata, supra*, at p. 1127.)

Brown and Goldt Property Management filed separate motions that relied on many of the same legal principles. Nonetheless, for the sake of clarity regarding the specific causes of action alleged against each defendant and some variations in the legal theories, asserted undisputed facts, and plaintiff's contentions on appeal, we review the court's orders on each motion separately.

## A. *Order Granting Brown's Motion for Summary Judgment*

### 1. *Brown's Negligence and Premises Liability*

██ The second amended complaint alleged two causes of action seeking to impose liability against Brown, as the owner of the unit rented to Kiymaz: premises liability and negligence. These causes of action were based upon the general principle that everyone is responsible for an injury to another caused by "his or her want of ordinary care or skill in the management of his or her property . . . ." (Civ. Code, § 1714, subd. (a).) A necessary element of both causes of action is the existence of a legal duty to the plaintiff. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207]; see also *Lundy v. California Realty* (1985) 170 Cal.App.3d 813, 818–819 [216 Cal.Rptr. 575] (*Lundy*).) The determination whether a duty exists is an issue of law. (*Burgess v. Superior Court* (1992) 2 Cal.4th 1064, 1072 [9 Cal.Rptr.2d 615, 831 P.2d 1197].)

██ It was undisputed that Brown owned the unit and was Kiymaz's landlord, and that the dog belonged to Kiymaz. The general duty of care owed by a landowner in the management of his or her property is attenuated when the premises are let because the landlord is not in possession, and usually lacks the right to control the tenant and the tenant's use of the property. Consequently, it is well established that a landlord does not owe a duty of care to protect a third party from his or her tenant's dog unless the landlord has actual knowledge of the dog's dangerous propensities, and the ability to control or prevent the harm. (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 152 [10 Cal.Rptr.3d 18] (*Yuzon*); *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1838 [41 Cal.Rptr.2d 192] (*Donchin*); *Lundy, supra,* 170 Cal.App.3d at p. 821; *Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 507 [118 Cal.Rptr. 741] (*Uccello*); see also *Cody F. v. Falletti* (2001) 92 Cal.App.4th 1232, 1236 [112 Cal.Rptr.2d 593] (*Cody F.*) ["In general, courts have imposed a duty to prevent the harm caused by a third party's animal when a defendant possesses the means to control the animal or the relevant property and can take steps to prevent the harm"].) " '[A] duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities. Because the harboring of pets is such an important part of our way of life and because the exclusive possession of rented premises normally is vested in the tenant, . . . *actual* knowledge and not mere constructive knowledge is required. For this reason . . . a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has actual

knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise.' " (*Yuzon, supra,* at p. 163, quoting *Uccello, supra,* at p. 514; see also *Donchin, supra,* at p. 1838 ["a landlord who does not have actual knowledge of a tenant's dog's vicious nature cannot be held liable when the dog attacks a third person"].)

■ Therefore, in the absence of evidence sufficient to create a triable issue of fact that Brown had actual knowledge his tenant's dog was dangerous, Brown owed no duty to plaintiff to protect her from his tenant's dog. In support of his motion Brown asserted as undisputed facts, and submitted supporting evidence, that he knew that Kiymaz owned a Jack Russell Terrier, but that, prior to the incident in which plaintiff was injured, Brown had never seen the dog or received any complaints about the dog. He had no knowledge that Kiymaz's dog had any dangerous propensities or posed any threat of bodily harm. Kiymaz declared her dog had never jumped on or bitten anyone before the incident involving plaintiff. Brown also submitted plaintiff's deposition testimony that, prior to the incident, plaintiff had twice seen the dog out without a leash, but had never seen the dog doing anything she would interpret as dangerous. The Association had also never received any complaints or reports about Kiymaz's dog, or reports that it was seen unleashed in the common areas of the condominium complex prior to the incident.

The foregoing evidence shifted the burden to plaintiff to submit admissible evidence to create a triable issue of fact as to Brown's knowledge of the dog's dangerous propensities. (*Yuzon, supra,* 116 Cal.App.4th at p. 166.) Yet, plaintiff failed to present any such evidence. She did not dispute that she herself had never seen Kiymaz's dog do anything she would interpret as dangerous. She also offered no evidence to dispute the asserted facts, supported by the testimony or declaration of Brown, Kiymaz, and a representative of the Association, that they had never received any complaints, never seen the dog engage in dangerous behavior, and had no knowledge of any dangerous propensities of Kiymaz's dog. Instead, plaintiff merely argued that the credibility of these witnesses was in issue. If summary judgment is otherwise proper it "may not be denied on grounds of credibility," except when a material fact is the witness's state of mind and "that fact is sought to be established *solely* by the [witness's] affirmation thereof." (Code Civ. Proc., § 437c, subd. (e), italics added.) This discretionary exception was inapplicable because Brown did not rely solely on his affirmation of lack of knowledge.[3] He also presented circumstantial evidence that he did not know

---

[3] The court also retains the discretion to grant the motion even when the moving party relies solely upon a declarant's statement concerning his or her state of mind. (*Butcher v. Gay* (1994) 29 Cal.App.4th 388, 404–405 [34 Cal.Rptr.2d 771].)

the dog had dangerous propensities, including the absence of any complaint to him or the Association, and plaintiff's own testimony that she had never seen the dog do anything she would interpret as dangerous. Plaintiff's bare assertion of the existence of credibility issues was insufficient to create a triable issue of fact on the issue of Brown's actual knowledge that the dog was dangerous. (Cf. *Donchin, supra,* 34 Cal.App.4th at pp. 1838–1841 [triable issue of fact exists where plaintiff submitted circumstantial evidence that landlord's assertion of lack of knowledge of dog's dangerous propensities was not credible, including his admission that a prior exculpatory statement was false].)

Nor did any of the evidence plaintiff offered in her supplemental statement of undisputed facts create a triable issue of fact on the issue of Brown's actual knowledge. Plaintiff submitted evidence that *after* the incident, the Association notified Kiymaz that, in July 2001, she was seen walking her dog without a leash, and fined her $50, and also warned Kiymaz that it had received complaints that she was allowing the dog to run free in the common areas and was not cleaning up after her pet, and that these actions could also result in fines. Plaintiff also submitted evidence that other residents had seen the dog off-leash, and urinating and defecating in the common areas. This supplemental evidence did not permit any inference that Brown knew of the dog's behavior *before* the incident alleged to have caused plaintiff's injuries. In any event, even if Brown had been aware that the dog was allowed to run off-leash, and that Kiymaz was not cleaning up after it, this evidence did not permit an inference that the dog was dangerous. In *Yuzon, supra,* 116 Cal.App.4th at page 164, the court held that evidence that a dog "ran out the door and scared the neighbors . . . does not, as a matter of law, support an inference that [the dog] was a dangerous dog. If that were the case, then all dogs would be deemed dangerous, as a matter of law, and no reasonable landlord would ever permit dogs on rental property for fear of liability." (*Id.* at p. 166.) If anything, evidence that Kiymaz's dog was seen off-leash, and engaging in the normal animal functions of urinating and defecating, is even less susceptible of an inference that the dog is dangerous, than the evidence held insufficient to create a triable issue in *Yuzon.*

The court also correctly concluded evidence that the breed of dog has certain characteristics,[4] by itself, is insufficient to support an inference that Brown had actual knowledge that his tenant's dog had any dangerous

---

[4] The expert declared that certain characteristics of Jack Russell Terriers, as a breed, render them "not recommended for apartments or condominiums" because the dogs will try to escape confinement, "jump and leap" and be "dangerously playful."

propensities. (*Lundy, supra,* 170 Cal.App.3d at p. 822 [landlord's awareness of breed of dog, and that its name was "Thunder," did not support inference that landlord knew his tenant's dog had dangerous propensities].)

Plaintiff contends that even if she failed to demonstrate the existence of a triable issue of fact as to Brown's actual knowledge, he had a duty to inspect the premises and a reasonable inspection would have disclosed the presence of a dangerous dog. Yet, cases involving landlords of residential property have consistently declined to impose such a duty. (See, e.g., *Uccello, supra,* 44 Cal.App.3d at p. 514 ["a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal"].) The case upon which plaintiff relies, *Portillo v. Aiassa* (1994) 27 Cal.App.4th 1128 [32 Cal.Rptr.2d 755] (*Portillo*), is distinguishable. In *Portillo* the plaintiff was injured by a guard dog the tenant kept on the premises of a liquor store held open to the public. The landlord had renewed the lease approximately a year before the injury occurred, and failed to conduct an inspection at that time. (*Id.* at p. 1132.) The jury found the landlord had no actual knowledge that the guard dog was dangerous. (*Id.* at p. 1133.) Nonetheless, in accordance with the instructions given, the jury held the landlord jointly and severally liable with the tenant (*id.* at p. 1133, fns. 2 & 3) based upon its finding that a reasonable inspection prior to renewing the lease would have disclosed the dog's dangerous propensities because the landlord would have observed the posted "beware of dog" signs and a posted newspaper article displaying "a picture of the dog with its paws on the store counter and its mouth open as if he were about to attack. The article referred to the dog as '[a] furry juggernaut, replete with iron trap jaws, razor sharp fangs and a rotten disposition,' and discussed the dog's recent attack on an attempted robber in the store." (*Id.* at p. 1132.) The Court of Appeal upheld the instruction allowing a finding of liability based upon the failure to inspect the premises, but expressly limited imposition of a duty to inspect to a *commercial* landlord who " 'leases property *for a purpose involving the admission of the public.*' " (*Id.* at p. 1134, italics added.) It also distinguished between guard dogs in public places and *residential family pets*, noting that the former "cannot be classified as 'an important part of our way of life' in the same way that pets can." (*Id.* at p. 1138.) We see no analogy between the lease of premises for a purpose involving the admission of the public, and the lease of a private condominium to a tenant for her own private residential use. We therefore decline plaintiff's suggestion that we should extend the commercial duty of inspection discussed in *Portillo* to the lessor of a condominium.[5]

[5] In any event, the duty to inspect in *Portillo* charged the landlord with responsibility only for those matters that would have been disclosed upon reasonable inspection. (*Portillo, supra,* 27 Cal.App.4th at p. 1136.) In *Portillo* there was evidence that even a cursory inspection would have disclosed the newspaper article and the "beware of dog" sign, which would have

## 2. *Nuisance*

▮ Nuisance liability arises from violation of a duty to another that interferes with the free use and enjoyment of his or her property. (*Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379, 1389 [49 Cal.Rptr.2d 166].) Plaintiff essentially restated her premises liability and negligence cause of action against Brown as a cause of action for nuisance. She alleged that Kiymaz created a nuisance by allowing her dog to run off-leash and to urinate and defecate in the common areas. She contends that Brown is liable for a nuisance created by his tenant even in the absence of a triable issue of fact as to knowledge of the dog's dangerous propensities or behavior.

▮ Assuming arguendo that evidence Kiymaz allowed the dog to run off-leash and urinate and defecate in the common areas would support an inference that the dog's behavior interfered with plaintiff's use and enjoyment of her property,[6] Brown, as the landlord, would not, as a general rule, be liable for a nuisance created by his tenant after the premises are let. Generally, "a landlord is not responsible to other parties for the misconduct or injurious acts of his tenant to whom his estate has been leased for a lawful and proper purpose when there is no nuisance . . . at the time of the leasing." (*Anderson v. Souza* (1952) 38 Cal.2d 825, 831 [243 P.2d 497]; see also *Napolin v. Hotel Rose* (1955) 137 Cal.App.2d 701, 706 [290 P.2d 925]; *Mundt v. Nowlin* (1941) 44 Cal.App.2d 414, 415–416 [112 P.2d 782].) In *Kalis v. Shattuck* (1886) 69 Cal. 593 [11 P. 346], the court held: " 'To bring liability home to the owner of real property . . . the nuisance must be one which is in its very essence and nature a nuisance at the time of the letting, and not something which is capable of being thereafter rendered a nuisance by the tenant.' " (*Id.* at p. 597.) Limited exceptions to the general rule of nonliability may hold the landlord responsible where the landlord "participated in the wrongful act by authorizing or permitting it to be done" (*id.* at p. 600), or where the landlord failed to conduct a reasonable inspection of the premises before renewing a lease (*Burroughs v. Ben's Auto Park, Inc.* (1945) 27 Cal.2d 449, 453–454 [164 P.2d 897]). These long-established limitations

---

alerted the landlord to the presence of a dangerous guard dog on the premises, who had attacked in the past. Here, by contrast, plaintiff's evidence that the dog was seen off-leash and urinating and defecating in public areas did not support an inference that the dog had dangerous propensities. Thus, even if we were to extend the duty to inspect, there is no evidence to create a triable issue that, had the inspection been performed, it would have revealed that the dog was dangerous.

[6] In the absence of evidence of interference with the use and enjoyment of the land, and damages based upon that injury, there is no cause of action for nuisance. (*Venuto v. Owens-Corning Fiberglas Corp.* (1971) 22 Cal.App.3d 116, 124–125 [99 Cal.Rptr. 350].)

on imposition of liability on the lessor for a nuisance created by the lessee continue to be recognized in modern cases that require, at least, a showing of the landlord's knowledge of the hazard, and ability to prevent the harm. (*Resolution Trust Corp. v. Rossmoor Corp.* (1995) 34 Cal.App.4th 93, 100 [40 Cal.Rptr.2d 328]; see also *Donchin, supra*, 34 Cal.App.4th at pp. 1838–1839; *Uccello, supra*, 44 Cal.App.3d at p. 514.)

No triable issue of fact existed as to any exception to the general rule of nonliability. Plaintiff did not submit any evidence that Brown authorized or participated in Kiymaz's allowing the dog to run off-leash or to defecate and urinate in the public areas. The exception regarding failure to inspect was inapplicable since there was no allegation or evidence that a lease was renewed after Kiymaz created the nuisance. The final exception requires a showing of the landlord's negligence based on knowledge of the hazard, and ability to prevent the harm. Yet, for the reasons we have already stated with respect to the cause of action for premises liability and negligence, plaintiff failed to create a triable issue of fact that Brown even had knowledge of the dog's dangerous propensities or of the behavior alleged to constitute a nuisance.

### 3. *Vicarious or Contractual Liability*

Plaintiff's remaining causes of action for negligence alleged *acts of Brown's tenant, Olga Kiymaz,* that plaintiff contends established *her* negligence, or negligence per se, or constituted a factual basis for imposing strict liability upon Kiymaz. Plaintiff sought to impose liability upon *Brown* for Kiymaz's acts on a theory of vicarious liability or that he owed a "nondelegable duty" to plaintiff to prevent his tenant from failing to restrain or control her dog. Plaintiff also alleged a cause of action for breach of a contract to indemnify her for personal injuries caused by his tenant's negligence.

In support of both the tort and contract theories, plaintiff relies primarily upon article II, section 7 of the CC&R's, which provides that an "owner may delegate his right of enjoyment to the common area to . . . tenants [and *such*] *owner is fully responsible for all acts or omissions of his delegates*" (italics added). She also relies on the provision that states "[a]n owner of any pet shall *assure* that such pet is restrained at all times it is upon the common areas, that such pet does no waste to common areas or other Units, and that such pet causes no unreasonable noise or other disturbances within the Project" (italics added). Plaintiff contends the italicized language means that

an owner who leases his or her unit may be held vicariously liable for any act or omission of his tenant that results in personal injury to another homeowner, including the failure of the tenant to control her pet. She further contends that these provisions constitute a contract whereby each owner agrees to indemnify any other homeowner for loss caused by his tenant's negligence in handling a pet, or to act as a surety or guarantor in the event that the tenant does not compensate the injured homeowner.

■ "Vicarious liability 'means that the act or omission of one person . . . is imputed by *operation of law* to another,' " without regard to fault. (*Srithong v. Total Investment Co.* (1994) 23 Cal.App.4th 721, 726 [28 Cal.Rptr.2d 672], italics added.) For example, vicarious liability for torts is imposed by operation of law upon employers for acts of their employees within the course and scope of employment, or upon principals for the acts of their agents. Kiymaz was neither Brown's employee nor agent. ■ Plaintiff's suggestion that Brown is vicariously liable for his tenant's negligence is contrary to established law that the negligence of a tenant "cannot be imputed to the landlord." (*Mundt v. Nowlin, supra,* 44 Cal.App.2d at p. 415; see also *O'Leary v. Herbert* (1936) 5 Cal.2d 416, 418 [55 P.2d 834]; *Anderson v. Souza, supra,* 38 Cal.2d at p. 831.)

■ The doctrine of nondelegable duty upon which plaintiff also relies is simply a form of vicarious liability. (*Srithong v. Total Investment Co., supra,* 23 Cal.App.4th at pp. 726–727.) This doctrine recognizes that the duty owed by a landowner " 'to persons who come on his property as well as to persons off the property for injuries due to the landowner's lack of due care in the management of his property . . . [g]enerally . . . is nondelegable.' " (*Cody F., supra,* 92 Cal.App.4th at p. 1240; see also *Ruoff v. Harbor Creek Community Assn.* (1992) 10 Cal.App.4th 1624 [13 Cal.Rptr.2d 755] [duty of individual homeowners to maintain the common areas in which they retain a property right cannot be delegated to the homeowners association].) The doctrine of nondelegable duty does not, however, *create* a duty where none would otherwise exist. Brown, as the landowner, did not owe a duty to plaintiff in the first instance, because the premises had been leased, and the undisputed facts established that he had no knowledge that his tenant's dog was dangerous. (See *Yuzon, supra,* 116 Cal.App.4th at p. 152; *Donchin, supra,* 34 Cal.App.4th at p. 1838; *Lundy, supra,* 170 Cal.App.3d at p. 821; *Uccello, supra,* 44 Cal.App.3d at p. 507.)

■ Plaintiff argues that despite these well-established principles, we should nonetheless impose a duty of care upon Brown based upon the aforementioned provision of the CC&R's. Yet, she cites no authority for the

novel proposition that CC&R's, which are private recorded restrictions on the use of property, may also operate as a legal basis for expanding the duty of care on the lessor of property subject to the CC&R's to protect others from a dog owned and controlled by a tenant. In *Cody F.*, *supra*, 92 Cal.App.4th 1232, the only case we have found that considered a remotely similar argument, this court rejected a suggested expansion of the duty of care based upon provisions in the CC&R's. In that case, an 11-year-old boy was badly injured by a pack of hunting dogs that had escaped from their owner's property. The boy was injured by the dogs as he walked on a street over which all members of the subdivision association, including the dog owner, had an easement. The association was responsible for maintenance of the street. (*Id.* at pp. 1236–1237.) The plaintiff sought to hold individual members of the association, other than the dog owner, liable for the dog owner's negligence based upon their property interest as easement holders over the street where the injury occurred, despite the fact that they did not own the dogs or the property where the dogs were kept by their owner. The plaintiff argued that the association members had the right to control the dog owner's actions because "the recorded declaration of restrictions prohibits keeping dogs for commercial purposes or when their presence could constitute a nuisance to others," and that the association or any of its members could " 'proceed at law or in equity to prevent [a] violation of any of the restrictions.' " (*Id.* at p. 1245.) This court held that the members of the association did not owe a duty of care simply by virtue of their easement over the street where the dogs attacked the child. We also declined the plaintiff's suggestion that the CC&R's expanded or created a duty of care that would not otherwise exist, reasoning that "the rights conferred on the individual members by the . . . declaration of restrictions do not include a duty to exercise those rights." (*Ibid.*) The terms of the CC&R's upon which plaintiff relies in this case in support of her argument for expanding the duty of care are not the same as those in *Cody F.*, and the plaintiffs in *Cody F.* did not even suggest that vicarious liability not recognized under existing legal principles could nonetheless be imposed based upon a provision in the CC&R's. Therefore, our decision in *Cody F.* is not dispositive of plaintiff's contentions. Nonetheless, in the absence of some other authority in support of plaintiff's contentions, we see no reason to depart from the basic principle that the legal effects of CC&R's should not be extended to include expansion of established tort law defining the duty of care and relationships for which vicarious liability is imposed for the act of another.

As for the breach of contract cause of action, we accept, arguendo only, plaintiff's premise that CC&R's can create a contractual obligation not only between a homeowners association and its members, but also between

individual members.[7] Nonetheless, we decline to adopt plaintiff's broad interpretation of the CC&R's as constituting a homeowner's contractual promise to assume tort liability for the acts and omissions of his or her tenant causing personal injury, to indemnify another homeowner for any injuries caused by the act or omission of a tenant, or to act as surety or guarantor for a tenant's obligation to compensate another homeowner for personal injuries.

■ The same rules that apply to interpretation of contracts apply to the interpretation of CC&R's. " '[W]e must independently interpret the provisions of the document. . . . It is a general rule that restrictive covenants are construed strictly against the person seeking to enforce them, and any doubt will be resolved in favor of the free use of land. But it is also true that the " 'intent of the parties and the object of the deed or restriction should govern, giving the instrument a just and fair interpretation.' " ' " (*Zabrucky v. McAdams* (2005) 129 Cal.App.4th 618, 622 [28 Cal.Rptr.3d 592].)

Plaintiff argues that the words "fully responsible" and "assure" must be broadly construed to mean an owner who rents his or her unit promises to compensate any other owner for a tenant's acts or omissions causing personal injury. Otherwise, the owners would be deprived of the benefit of their bargain, and the intent of the CC&R's that any pet owner living in the complex would be bound by the rules regarding handling of pets in the common area would be defeated. Moreover, she suggests the members will be left without a means of enforcement when an owner leases the premises. We find plaintiff's broad interpretation of the CC&R's to be unreasonable and unnecessary to accomplish what she suggests is their intent, for several reasons. First, under common law, the primary reason a landlord is not liable for the acts of his or her tenant, is that the landlord is not in possession, and lacks the power to control the tenant's actions. (See, e.g., *Uccello, supra,* 44 Cal.App.3d at p. 511.) Given the inability to control or predict such a risk, it is unlikely that any homeowner would willingly assume it, or be able to insure it. Second, article II, section 7 provides other means to protect the expectation of members that tenants will be bound by the rules regarding pets. These include requiring owners to include a copy of the declaration of

---

[7] In *Franklin v. Marie Antoinette Condominium Owners Assn.* (1993) 19 Cal.App.4th 824, 828 [23 Cal.Rptr.2d 744], the court observed that the parties assumed that the "CC&R's formed a contract between the Association and the condominium owners" but noted that other jurisdictions had refused to treat CC&R's as contracts between the owners and the owners association. In *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 512 [229 Cal.Rptr. 456, 723 P.2d 573], the court accepted arguendo the plaintiff's premise that the CC&R's could form a contract between the homeowners association and its members, but nonetheless concluded plaintiff failed to allege a breach because no provision of the CC&R's imposed an obligation upon the association to provide additional lighting in the common area that she contended would have prevented her injury by a third party. Plaintiff cites no case holding that the CC&R's form a contract between *members.*

CC&R's as part of a lease or rental agreement, together with a copy of the current Association rules. The CC&R's also provide that a member or the Association may enforce the CC&R's and Association rules against any "*tenant* or occupant of the project" (italics added). Therefore, the broad construction plaintiff advocates *is neither reasonable nor necessary to accom*-plish the intent to provide all members with an environment in which any pet owner occupying a unit complies with the rules on pet handling in the unit and common areas. Also, any doubt must be resolved against plaintiff's proposed construction because imposing tort liability on an owner for any act or omission of a tenant, without regard to the owner's fault, would substantially inhibit or burden the exercise of an owner's free use of his property as a rental unit, because of exposure to unmanageable risk. (See *Zabrucky v. McAdams, supra,* 129 Cal.App.4th at p. 622 [doubts should be resolved in favor of free use of land].) Absent language expressly specifying that owners assume tort liability to other members for the acts and omissions of their tenant causing personal injury, agree to indemnify members for any injuries caused by the act or omission of a tenant, or agree to act as surety or guarantor for a tenant's obligation to compensate another homeowner for personal injuries, we decline to read such a sweeping deviation from established common law into these provisions of the CC&R's.

For the foregoing reasons, we conclude that the causes of action seeking to impose vicarious liability upon Brown for injuries caused by his tenant and her dog, or to hold him liable to plaintiff on a breach of contract theory based upon these provisions of the CC&R's, fail as a matter of law.

## B. *Order Granting Summary Judgment for Goldt Property Management*

The only causes of action alleged against Goldt Property Management were for negligence and nuisance. As to the negligence cause of action the court found that the duty of the Goldt defendants, as Brown's leasing agent, was no different than that of the landlord, and they also owed no duty of care in the absence of a triable issue of fact as to actual knowledge of the dangerous propensities of Kiymaz's dog. On appeal, plaintiff contends only that, based upon *Portillo, supra,* 27 Cal.App.4th 1128, Goldt Property Management, as the agent responsible for leasing the premises, should at least "have a duty to investigate the nature and suitability" of the tenant's dog when the unit is part of a "high density" multiple-unit complex. As we explained in upholding the order granting summary judgment for Brown, the court in *Portillo* expressly limited imposition of a duty to inspect to a *commercial* landlord who " 'leases property *for a purpose involving the admission of the public*' " (*id.* at p. 1134, italics added) and also distinguished between guard dogs in public places and *residential family pets*, noting that the former "cannot be classified as 'an important part of our way of life' in

the same way that pets can" (*id.* at p. 1138). Here, the undisputed facts were that Goldt Property Management, as Brown's leasing agent, leased only a private condominium to Kiymaz for her own private residential use, and allowed her to have one residential pet. We see no analogy between the lease of premises for a purpose involving the admission of the public, and the lease the Goldt defendants arranged on Brown's behalf. We therefore decline plaintiff's suggestion that we should extend the commercial duty of inspection discussed in *Portillo* to these defendants.

With respect to the cause of action for nuisance, plaintiff also fails to demonstrate any error. She asserts that Goldt Property Management owed the same duty as a landlord for a nuisance created by the tenant, and cites *Anderson v. Souza, supra,* 38 Cal.2d 825, for the principle that when "the landlord or his agent is a participant in the tenant's creation or maintenance of the nuisance, they are subject to liability." The undisputed facts, however, were that *Kiymaz* created the alleged nuisance by allowing her dog to run off-leash and to defecate and urinate without cleaning up after it, and by generally failing to control it in the common areas. Plaintiff failed to create a triable issue of fact that Goldt Property Management even had knowledge of the dog's dangerous propensities or behavior alleged to constitute nuisance, much less any evidence that Goldt Property Management authorized or participated in Kiymaz's acts.

For the foregoing reasons, we conclude that the court properly granted the motions for summary judgment in favor of Brown and Goldt Property Management.

## II.

## Attorney Fees

After obtaining judgment in their favor, Brown and the Association moved for attorney fees under Civil Code former section 1354, subdivision (f),[8] which provides that reasonable attorney fees shall be awarded to the prevailing party in an action to enforce the governing documents of a common interest development.

Plaintiff contends that the court erred in finding the causes of action for breach of contract and declaratory relief were actions to enforce the rights and obligations of the parties under the CC&R's, because CC&R's are equitable servitudes and actions to enforce them typically seek equitable

---

[8] Civil Code former section 1354, subdivision (f) is now codified in Civil Code section 1354, subdivision (c), as amended by Statutes 2004, chapter 754, section 1.

relief. She reasons that since she sought damages for personal injury, rather than equitable relief such as an injunction against the dog entering the common areas off-leash, or ordering the dog be removed from the premises, none of her causes of action were to enforce the CC&R's.

 With respect to the cause of action for declaratory relief, this argument fails because plaintiff expressly sought equitable relief, in the form of "a declaration" that the CC&R's "establish plaintiff's right to be paid, compensated, or indemnified by defendant Brown for the injuries and damages sustained as a result of his tenant's dog . . . ." (See *Caira v. Offner* (2005) 126 Cal.App.4th 12, 24 [24 Cal.Rptr.3d 233] [declaratory relief is generally classified as equitable].) In any event, the type of relief sought is not dispositive of entitlement to fees because CC&R's may be enforced by proceedings in equity *or* law. (See, e.g., *Cutujian v. Benedict Hills Estates Assn.*, *supra*, 41 Cal.App.4th at p. 1385 [party damaged by a violation of the CC&R's may seek money damages]; *Posey v. Leavitt* (1991) 229 Cal.App.3d 1236, 1246 [280 Cal.Rptr. 568] ["Under well-accepted principles of condominium law, a homeowner can sue the association for damages and an injunction to compel the association to enforce the provisions of the declaration"].) Indeed, the CC&R's themselves provided that they were enforceable "in any manner provided by law or in equity." Therefore, the fact the plaintiff did not limit her prayer for relief to equitable remedies, and also sought damages, did not preclude an award of fees under Civil Code section 1354. (See also *Harbor View Hills Community Assn. v. Torley* (1992) 5 Cal.App.4th 343, 345, 350 [7 Cal.Rptr.2d 96] [fee award proper under both Civ. Code, §§ 1717 & 1354 to homeowners association that prevailed in an action for injunctive relief and damages].)

 Instead, the relevant question concerning entitlement to fees under Civil Code section 1354 is whether the action is to enforce the rights and obligations of the parties under the governing documents, specifically the CC&R's. The cause of action for declaratory relief sought a declaration that the CC&R's created a right in plaintiff to be compensated, and imposed upon Brown an obligation to pay, for damages caused by his tenant's dog. Plaintiff asserts, without citation to authority, that a mere declaration of rights, without a prayer for injunctive relief, does not "enforce" those rights. Even if we accept this assertion arguendo, plaintiff's cause of action for declaratory relief did not merely seek a declaration of rights. She also sought a jury trial to determine damages following a judicial declaration of her rights. The record therefore simply does not support plaintiff's contention that she sought only a declaration of rights. By seeking damages, she unequivocally sought to "enforce" her rights under the CC&R's based upon the judicial declaration she also sought.

 The cause of action for breach of contract also constituted an action to enforce the CC&R's. In the complaint, plaintiff described the breach of contract as a "[b]reach of the CC&R's." She further alleged that Brown, under the CC&R's, was contractually obligated "to indemnify, compensate, and pay plaintiff for all of her losses and damages incurred as a result of her injuries from Brown's tenant's dog in the subject incident," and that "Brown is in breach of the CC&R's . . . by failing to indemnify" plaintiff for loss caused by his tenant's "acts or omissions." Therefore, the alleged source of the contractual obligation and its terms was the CC&R's and plaintiff sought damages for the alleged breach. An action for damages arising out of a breach of contract is an action to "enforce" the contract. (See *Heidt v. Miller Heating & Air Conditioning Co.* (1969) 271 Cal.App.2d 135, 137 [74 Cal.Rptr. 695].)

We conclude that the causes of action for breach of a contractual obligation alleged to have been created by the CC&R's, and for declaratory relief affirming plaintiff's interpretation of the CC&R's, were actions brought to enforce the CC&R's. The court therefore did not err in determining that pursuant to Civil Code section 1354 the prevailing party was entitled to fees incurred in defense of these causes of action.

The court apportioned the fees requested to reflect what it determined were the fees incurred in defense of these two causes of action, and awarded only $6,000 of the approximately $30,000 defendants had requested in fees. Plaintiff does not contend that the court abused its discretion in apportioning fees to award only those attributable to the defense of these two causes of action. (See, e.g., *Abdallah v. United Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 [51 Cal.Rptr.2d 286] [apportionment of fees is subject to court's discretion].) She does, however, suggest that the court failed to apportion fees as between the two defendants, Brown and the Association. To the contrary, since the causes of action for breach of contract and declaratory relief were alleged only against Brown, the court also must necessarily have excluded any fees incurred in defense of the Association, in determining the amount of fees attributable to the defense of these two causes of action.[9]

---

[9] The court's order does state that it "awards Defendant*s* $6000 in attorney*s*' fees [italics supplied]." We do not construe this use of the plural to mean that the court awarded any fees incurred by the Association in defending against the other causes of action. The use of the plural is explained by the fact that the motion for fees was made on behalf of both defendants, who were jointly represented by the same law firms. The motion initially sought *all* fees incurred by both defendants as to all causes of action, but the court stated in its order that defendants' motion was granted only "in part." The rest of the order clearly states the court was awarding only reasonable fees incurred in defense of the causes of action for breach of contract and declaratory relief, and since Brown was the only named defendant with respect to these causes of action, the amount of fees the court determined were attributable to the defense of these causes of action were necessarily incurred only on Brown's behalf.

## CONCLUSION

The judgment and postjudgment order awarding fees are affirmed.

Swager, J., and Margulies, J., concurred.

A petition for a rehearing was denied November 15, 2006, and appellant's petition for review by the Supreme Court was denied January 3, 2007, S148295. Corrigan, J., did not participate therein.