Filed 2/15/23  Dutcher v. Wallace CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| JANDA DUTCHER,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>JAMES WALLACE et al.,<br><br>    Defendants and Respondents. | A163135<br><br>(Contra Costa County<br>Super. Ct. No. CIVMSC1802179) |

Plaintiff Janda Dutcher sued, among others, defendants Tami and Steven Weber after being bitten by a dog present at their property; she appeals an order granting them summary judgment of her general negligence and premises liability claims.  We conclude there is no evidence the Webers — landlords who neither lived at the property nor owned the dog — had actual knowledge a dog with dangerous propensities was on the premises.  They consequently had no duty to prevent the harm alleged, and Dutcher cannot establish the elements necessary for a general negligence or premises liability cause of action.  We affirm.

### BACKGROUND

The Webers own a home in Contra Costa County.  They rent it to their son, defendant Timothy Adams, who lives there with his wife, Desiree

Adams, their three young children, and a dog.[1]  The Webers occasionally visit to see their grandchildren.  The Adamses pay the Webers a reduced monthly rent in exchange for maintaining and landscaping the property, and the Adamses reimburse the Webers for paying water and garbage bills.  Although Steven did not produce a written rental agreement or more than one copy of a rent check, he testified the Adamses never missed a monthly payment.

Defendant James Wallace temporarily lived with the Adamses in 2017.  During a three-month period, Wallace stayed approximately four to five nights in total.  Wallace owned the dog at issue here — Rambo — who also occasionally stayed at the house. Whenever Wallace left, he either took Rambo with him or left the dog at home in a cage.  Desiree and Timothy both stated Rambo did not act aggressively with them, their dog, or children.  But a neighbor recounted a conversation with Desiree in which she acknowledged Rambo had once escaped the house and fought with another dog.  The Webers declared they did not know Wallace and Rambo were staying at the house; Steven only knew that a person familiar with Timothy was going to stay for a few weeks.

On March 16, 2017, Dutcher was walking her two dogs across the street from the Adamses' home.  Suddenly, the Adamses' dog and Rambo ran from the front yard towards Dutcher, and Rambo tried to attack one of Dutcher's dogs.  While Dutcher was trying to protect her dog, Rambo bit her several times on her left arm, resulting in injuries that required medical treatment.  Wallace surrendered Rambo to be euthanized and thereafter did not return to the house.

---

[1] For clarity, we use first names when referring to the Webers and Adamses individually.  We intend no disrespect.

It is unclear how the dogs escaped from the premises. A neighbor observed the Adamses' dog loose in front of the house on several occasions. And Dutcher at some point noticed the Adamses had a broken fence, but it is unclear whether it was broken before or during the incident. The Webers stated they were not aware of any property defects at the time of the incident, such as problems with backyard fencing, gates, or latches. Sometime before March 16, Timothy notified Steven the fence had suffered windstorm damage. Timothy, a carpenter, screwed down loose fence boards and reinforced the fence to keep it from falling down. According to Timothy, Steven did not see the damage; he only saw the completed repairs and found them acceptable.

Dutcher sued the Adamses; the Webers, as individuals and as trustees of a family trust; and Wallace. As relevant here, Dutcher alleged all defendants were negligent for allowing a dog to escape the premises and bite her. In addition, in the premises liability cause of action, she alleged defendants knew or should have known the dangerous propensities of the dog and negligently allowed it to escape.

The Webers moved for summary judgment, contending they had no actual knowledge there was a dog with dangerous propensities on the premises. They also argued they did not have a duty to inspect the property and there was no showing there was a property defect that could have contributed to the incident. The trial court granted the motion and entered judgment in the Webers' favor.

## DISCUSSION

Summary judgment is appropriate if the moving party demonstrates there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v.*

3

*Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  A defendant seeking summary judgment must demonstrate the cause of action lacks merit because the plaintiff cannot establish one or more necessary elements or there is a complete defense.  (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67.)  Upon making that showing, the burden shifts to the plaintiff to demonstrate there is a triable issue of fact for that cause of action.  (*Ibid*.)  A genuine issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion." (*Aguilar*, at p. 845.)  Courts must draw all reasonable inferences from the evidence in the light most favorable to the nonmoving party.  (*Id*. at p. 843.)  We review de novo the decision to grant summary judgment.  (*Morgan*, at p. 67.)

Prevailing on a cause of action for general negligence and premises liability requires demonstrating the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury.  (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998; *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1369 (*Chee*).)  A landlord owes an attenuated duty of care "when the premises are let because the landlord is not in possession, and usually lacks the right to control the tenant and the tenant's use of the property." (*Ibid.*)  Subject to various exceptions, landlords generally are not liable for injuries to their tenants or tenants' invitees from dangerous conditions on the property that arise after the tenant takes possession.  (*Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 510.)  A landlord does have a duty, however, to protect third parties from harm caused by a tenant's vicious dog if "the landlord has 'actual knowledge' of the dog's vicious nature" and its presence on the premises — " 'not mere

constructive knowledge' " — and the landlord can control or prevent the harm. (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 152, 163 (*Yuzon*).)

Dutcher contends the Webers breached their nondelegable duty to maintain the property in a reasonably safe condition in order to prevent a dog from escaping onto a public street and causing harm. This argument ignores a threshold issue. Whether the Webers, as landlords,[2] owed a duty to third parties to prevent a dog attack first requires determining whether they had *actual knowledge* of the presence of a dog with dangerous propensities. (*Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1838 [analyzing a landlord's duty to third parties regarding dangerous dogs is a two-step process].) Only after answering that question in the affirmative does the court consider a "landlord's ability to prevent foreseeable harm" — that is, whether a landlord had the opportunity to remedy an existing problem with the property, such as a broken fence, but failed to do so. (*Id*. at pp. 1838– 1839.) Here, there is no triable issue of fact regarding the Webers' ignorance of Rambo's presence on the premises or the dog's vicious tendencies (*ibid*.); resolving whether the Webers failed to adequately maintain their property is thus unnecessary.

Nothing in the record indicates the Webers met Wallace or Rambo or were informed about the dog. The Webers declared they did not know either were staying at the property. While " 'denial of such knowledge will not, per se, prevent liability,' " there is no circumstantial evidence the Webers "must have known" about Rambo's presence at the property. (*Yuzon, supra,*

---

[2] On appeal, Dutcher does not seriously dispute the Webers and Adamses had a landlord-tenant relationship — uncontested evidence established that the Adamses verbally agreed to rent the house, they performed home maintenance in exchange for a reduced rent, and they never missed a monthly rent payment.

5

116 Cal.App.4th at p. 163.) The frequency of the Webers' visits to the home — somewhere between once every few months to as much as five times each month — was not such that they must have known about Rambo, especially since Wallace and his dog only stayed at the house four or five nights in the span of three months.

Moreover, even if the Webers crossed paths with Wallace and Rambo at the property, there is no evidence the Webers learned of the dog's dangerousness. And the Webers had no duty to inspect the premises to learn of the existence of a dangerous dog. (*Yuzon*, *supra*, 116 Cal.App.4th at p. 163.) Timothy testified he had never seen Rambo act aggressively; Desiree similarly testified Rambo exhibited no aggressiveness toward her children or her dog. (Cf. *Yuzon*, at p. 164 [landlord could not have known of dog's vicious propensities since there were no prior incidents involving the dog].) Dutcher cites a neighbor's declaration that Desiree told her Rambo had previously escaped through the property's fence and fought with another dog. Even viewing this evidence in the light most favorable to Dutcher, there was no evidence this incident was observed by or reported to *the Webers*. (*Yuzon*, at p. 164.) Indeed, nothing in the record indicates the Webers received any reports or complaints about Rambo's aggressiveness. (*Chee*, *supra*, 143 Cal.App.4th at p. 1370 [landlord had no knowledge of dangerous dog where he had never seen the dog or received any complaints].) Speculation or conjecture about the Webers' knowledge of Rambo's vicious nature is insufficient to defeat summary judgment. (*Yuzon*, at p. 166 [" 'An issue of fact can only be created by a conflict of evidence. It is not created by "speculation, conjecture, imagination or guess work." ' "].)

Disputing this conclusion, Dutcher contends (a) the Adamses were the Webers' agents because they maintained the property; (b) *the Adamses* knew

6

of Rambo's dangerous disposition; and (c) therefore, the Adamses' knowledge must be imputed to the Webers. (*RSB Vineyards, LLC v. Orsi* (2017) 15 Cal.App.5th 1089, 1099 ["principal is charged only with the knowledge of an agent acquired while the agent was acting in that role and within the scope of his or her authority as an agent"].) We reject this creative argument.

An agency relationship arises when a principal manifests assent to an agent acting on the principal's behalf, the principal controls the agent, and the agent assents or otherwise consents to this arrangement. (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 410–411.) But " '[n]ot all relationships in which one person provides services to another satisfy the definition of agency.' " (*RSB Vineyards, LLC v. Orsi, supra*, 15 Cal.App.5th at p. 1100.) That the Adamses' maintained and landscaped the property in exchange for reduced rent does not give rise to an inference the Webers had the requisite control over *how* the Adamses did the work let alone that the Adamses represented the Webers in dealings with third persons. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 541["Control is the key characteristic of the agent/principal relationship"].) The Webers did not, for example, specify the type of work that was necessary nor the areas that needed repair. Rather, the record shows Timothy made decisions regarding fence repairs using his own judgment and notified Steven after repairs were completed. Thus, the Adamses were not the Webers' agents, they were mere tenants. (*Chee, supra*, 143 Cal.App.4th at pp. 1374–1375; Friedman et al., Cal. Practice Guide: Landlord-Tenant (The Rutter Group 2022) ¶ 6:79:8 ["a tenancy does not itself make tenants their landlords' . . . agents"].) Dutcher's suggestion the Webers are vicariously liable here is "contrary to established law" that alleged negligence of a tenant " 'cannot be imputed to the landlord.' " (*Chee*, at p. 1375.)

Finally, Dutcher contends the Webers were negligent per se for violating Contra Costa County's leash ordinance. (Contra Costa County Code, § 416-4.402 ["[n]o person owning, possessing, harboring, or controlling an animal may allow the animal to be at large"].) Not so. The ordinance does not apply to the Webers as the undisputed facts demonstrate they did not own, possess, harbor, or control Rambo.

## DISPOSITION

The judgment is affirmed. Costs are awarded to respondents.

_____
Rodríguez, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.


A163135

9